Froessel, J.
In January, 1961 defendant was convicted of violations of the narcotics laws (unlawful possession of, and *370 with intent to sell, heroin; Penal Law, § 1751, subds. 2, 3, felonies; and Public Health Law, § 3305, a misdemeanor). On June 13, 1961 his conviction was unanimously affirmed by the Appellate Division.
We have examined the several contentions urged upon us by defendant, and, were it not for the subsequent decision of the Supreme Court of the United States in Mapp v. Ohio (367 U. S. 643), rendered June 19, 1961, we would likewise affirm on the authority of such cases as Wolf v. Colorado (338 U. S. 25); People v. Richter’s Jewelers (291 N. Y. 161); People v. Defore (242 N. Y. 13, cert. den. 270 U. S. 657); People v. Adams (176 N. Y. 351, affd. 192 U. S. 585). In Mapp, however, the Supreme Court overruled its former holdings, such as Wolf v. Colorado (supra), and announced a new rule, deciding — for the first time — that evidence obtained by search and seizure in violation of the Fourth Amendment, made applicable to the States through the due process clause of the Fourteenth, is inadmissible in a State court.
There can be no doubt that it is the duty of State courts to follow the Mapp holding in all trials taking place after June 19, 1961. However, whether we are commanded to, and if not whether we should, apply it in pending appeals (see Griffin v. Illinois, 351 U. S. 12, 26; Great Northern Ry. Co. v. Sunburst Co., 287 U. S. 358, 363-366; Warring v. Colpoys, 122 F. 2d 642, cert. den. 314 U. S. 678; 70 Harv. L. Rev. 83, 129), where, as here, the trial was completed and an intermediate appellate court has affirmed before Mapp was decided, is a threshold question in this case. To do so would likely result in the reversal of many convictions in pending cases, although the trials were free from error and conducted according to the law of this State and the interpretation of the Constitution by the Supreme Court of the United States as of the time of the trials.
While it is the general rule that we give effect to the law as it exists at the time of our decision (Knapp v. Fasbender, 1 N Y 2d 212, 243; Matter of Tartaglia v. McLaughlin, 297 N. Y. 419; Quaker Oats Co. v. City of New York, 295 N. Y. 527, 536; see, also, Vandenbark v. Owens-Illinois Co., 311 U. S. 538, 542-543), some of the members of this court have felt that we are not required to, and should not, do so in the instant case *371 particularly because of the language employed by the Supreme Court in Mapp at pages 654-656, 658. The majority, however, are of the opinion that we should adhere to the general rule, and review defendant’s conviction in light of the law as it presently exists.
Holding, then, as we do, that the Mapp rule is to be applied in our review of pending appeals from pre-Mapp convictions, we turn now to the question of whether on this record the narcotics introduced at defendant’s trial were obtained as the result of an illegal search and seizure.
The evidence shows that at about 10:30 p.m. on June 24, 1959 New York City Detectives Brennan and Short together with two Federal narcotics agents approached defendant in front of a two-story dwelling in the Bronx, the first-floor apartment of which they knew to be the home of Alfred Perillo, defendant’s brother-in-law. Defendant was in the process of adjusting the top of his convertible automobile, and his sister, Perillo’s wife, was inside the car helping him. Brennan identified himself and said he would like to speak to defendant inside the house. Defendant suggested they go somewhere else, but Brennan said he preferred to talk in the apartment. At this time defendant was not searched, no narcotics were observed in his possession, and he was not arrested. The officers had no search warrant and apparently no arrest warrant for defendant or Perillo.
The detectives and agents, accompanied by defendant and his sister, entered the hallway outside the first-floor apartment. Someone knocked on the glass door entrance; in response, two slats of the Venetian blind covering the inside of the door were parted and two eyes of a then unknown person peered through. The slats were promptly closed, and the officers heard footsteps retreating rapidly within the house, at which time Brennan ran around the house into the back yard. Detective Short told defendant to open the door or he would “ kick it down ”.
Defendant stated he did not have a key, whereupon his sister unlocked the door. Short entered the apartment first, and ran to the rear room, where he observed Perillo pick up a green leather vanity case and drop it out a window. Thereupon, Perillo suffered a heart attack. Brennan caught the ease and returned with it to the apartment. Out of defendant’s sight. *372 he examined its contents, which were later disclosed to be more than three pounds of white powder containing heroin. Brennan closed the case, took defendant to a side bedroom, and asked him if he had seen it before. Defendant said the case belonged to him, and substantially described its contents. He stated he bought the heroin for $5,500, intending to sell it for $350 or $450 an ounce; that he gave Perillo money each month (or paid his rent) to keep the heroin in the apartment. Defendant was arrested, and later, at his own home and at a police station, he repeated his admission of ownership of the narcotics. At trial, over objection, the narcotics were received in evidence. Perillo, named a codefendant, died before trial.
The Fourth Amendment of the Constitution of the United States provides: “ The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” It protects against “unreasonable governmental intrusion” into the privacy of a person’s home (Silverman v. United States, 365 U. S. 505, 511; Jones v. United States, 357 U. S. 493, 498), and any evidence discovered as a result of such an intrusion is now constitutionally tainted and inadmissible in a State court (Mapp v. Ohio, supra). It has been held that it matters not that the evidence was in open view and disclosed by the officers’ mere observation (Accarino v. United States, 179 F. 2d 456); that it came to the officers’ attention as the result of the defendant’s abortive attempt to secrete or dispose of it (Hobson v. United States, 226 F. 2d 890; Work v. United States, 243 F. 2d 660); or that it was turned up after a more conventional search of defendant’s premises (Weeks v. United States, 232 U. S. 383; United States v. Jeffers, 342 U. S. 48; Taylor v. United States, 286 U. S. 1; cf. Hester v. United States, 265 U. S. 57).
In the instant case, Detective Short, while in Perillo’s apartment, observed the latter pick up the case containing the heroin from the bedroom floor and drop it out of the window. Unless the officer’s presence in the apartment can be justified, it con *373 stituted an unlawful intrusion into the home, and the evidence thereby discovered would be inadmissible.
The Fourth Amendment, as noted, condemns only those searches and seizures which are unreasonable (Harris v. United States, 331 U. S. 145,150). A search is reasonable if conducted pursuant to a legal search warrant, by consent, or incident to a lawful arrest. In the present case, the search was not made under a search warrant. Nor was there on this record a consent search. There was, at most, acquiescence on defendant’s part to talk to the officers inside Perillo’s apartment, but Perillo would not open his door. It may hardly be said that the unlocking of the door by Perillo’s wife was a consent to search the apartment, for entry gained by submission to authority after a threat to kick down the door is not entry gained by consent (Johnson v. United States, 333 U. S. 10, 13; Amos v. United States, 255 U. S. 313, 317; Catalanotte v. United States, 208 F. 2d 264, 268).
The search and seizure could, however, be upheld if incident to a lawful arrest (Draper v. United States, 358 U. S. 307, 310-311; Giordenello v. United States, 357 U. S. 480, 483; United States v. Rabinowitz, 339 U. S. 56, 60; Agnello v. United States, 269 U. S. 20, 30; People v. Defore, 242 N. Y. 13, 18, supra). Thus, if the seizure follows a lawful entry to effect an arrest, then it is valid ‘ ‘ even though the officers are not aware that such property is on the premises when the search is initiated” (Harris v. United States, supra, 331 U. S., p. 155). The validity of an arrest or an entry to effect an arrest without a warrant depends on there being probable cause to make the arrest. That probable cause, however, cannot be based upon evidence obtained as a result of the search, when the validity of the search itself depends upon the legality of the arrest. If there is no probable cause to arrest initially, the entry and subsequent search are illegal, for “ A search prosecuted in violation of the Constitution is not made lawful by what it brings to light ” (Byars v. United States, 273 U. S. 28, 29; Henry v. United States, 361 U. S. 98,104). “ In law [a search] is good or bad when it starts and does not change character from its success ” (United States v. Di Re, 332 U. S. 581, 595). “ Belief, however well founded, that an article sought is con *374 cealed in a dwelling house furnishes no justification for a search of that place without a warrant” (Agnello v. United States, supra, 269 U. S., p. 33; Jones v. United States, supra, 357 U. S., p. 497; Taylor v. United States, supra).
Of course, when this case was tried, the People were not required to prove that the police had probable cause to arrest defendant, or Perillo, or both. The admissibility of the fruits of a search was not then dependent upon its lawfulness. Since the law did not require such proof, the present record may not disclose what cause, if any, the police had for entering Perillo’s apartment. It may well be that at the time of the entry the officers had probable cause which would have justified their making an arrest, for Short testified that they proceeded not only on defendant’s and Perillo’s actions but also on the basis of ‘ ‘ our experience and what we knew ’ ’.
In light of the Mapp decision, this conviction must be reversed on the present record, but the People should have the opportunity to establish the propriety of the police entry into Perillo’s home. We have no statutory or rule procedure comparable to subdivision (e) of rule 41 of the Federal Buies of Criminal Procedure. However, there appears to be no bar to defendant’s making an application to the court in advance of trial to suppress the challenged evidence. Hearsay will be admissible on the issue of probable cause (Draper v. United States, 358 U. S. 307, supra; Brinegar v. United States, 338 U. S. 160, 172-176).
Accordingly, the judgment of conviction should be reversed and a new trial ordered.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke and Foster concur; Judge Fuld concurs in result only.
Judgment reversed, etc.