Charles E. SCHAFFER, Petitioner,

v.

Raymond W. ANDERSON, Respondent.

Raymond CHALMERS, Petitioner,

v.

Raymond W. ANDERSON, Respondent.

Nos. 33, 34.

United States District Court
D. Delaware.

Dec. 3, 1963.

Harold Leshem and H. B. Rubenstein, Wilmington, Del., for petitioner Schaffer.

David Snellenburg, II, of Killoran & Van Brunt, Wilmington, Del., for petitioner Chalmers.

W. Laird Stabler, Jr., Deputy Atty. Gen., Wilmington, Del., for respondent.

LAYTON, District Judge.

These petitions for habeas corpus draw into question the legality of the admission into evidence of a $20 bill produced by

one of the petitioners pursuant to a demand by a police detective during the course of a routine questioning. This $20 bill constituted significant evidence at the trial of petitioners resulting in their conviction for burglary.

The facts preceding petitioners' detention, interrogation and subsequent arrest are these: On October 1, 1961, between 6:15 P.M. and 11:20 P.M., the home of Dr. Edwin Fluevog was burglarized and a single $20 bill taken from a desk drawer. At 12:20 A.M., on October 2nd, police officers who were on a routine patrol, and who then had no knowledge of the Fluevog burglary, saw petitioners walking along a back road about two miles from Dr. Fluevog's home. The petitioners were dressed in black; their pant legs were wet up to the knees and grass and particles of mud were on their cuffs. The troopers stopped their car and questioned the petitioners. Schaffer stated that they were hitchhiking from Philadelphia to Norfolk along Route 13, that they had been left off on a back road away from that route and that their pants were wet and dirty because they had been run off another nearby back road two or three times. This explanation was of doubtful credibility. Nevertheless, the officers decided to take petitioners to Route 13, and after a routine "frisking", asked them into the car. On the way to Route 13, the officers asked the petitioners for identification. When the petitioners said they had no wallets or any other form of identification with them, the officers' suspicions were aroused and they decided to take the petitioners to troop headquarters and detain them there in order to investigate the truth of their story.

After their arrival at troop headquarters, Detective Fugate, who had just been assigned to investigate the burglary, noticed petitioners sitting on a bench and preliminarily questioned them. Shortly after 1:00 A.M., he directed Schaffer to the criminal investigation room and politely asked him to sit in a chair. In this connection, Fugate testi-

fied that Schaffer was "very jovial all the time." Schaffer then repeated his highly unlikely story about being dropped off on the back road while hitchhiking along Route 13. At this point, Fugate asked him to empty the contents of his pockets. Fugate testified that Schaffer did so "voluntarily." Among other things, there was a single $20 bill. Fugate returned it to Schaffer. Thereafter, he began to question Chalmers alone.[1] Shortly before 2:40 A.M., he was advised by another officer that a $20 bill had been taken in the Fluevog burglary and it might be identified by its serial number. At 2:40 A.M., Fugate returned to Schaffer and asked him if he had the $20 bill in his possession. Schaffer said yes and when Fugate asked if he could see it, Schaffer again gave it to him. The serial number checked out and Schaffer was then arrested within two minutes.

11 Delaware Code § 1902 provides that "a peace officer may stop any person abroad who he has reasonable ground to suspect * * * has committed or is about to commit a crime, and may demand of him his name, address, business abroad, and where he is going." If the person's answers are not satisfactory, he "may be detained and further questioned and investigated." This detention may not exceed two hours after which the person "shall be released or be arrested and charged with a crime."

When the testimony during the trial in the Delaware Superior Court revealed precisely when the ultimate seizure of the $20 bill had occurred, counsel made a motion to suppress its introduction into evidence on the grounds (1) that the seizure had occurred while the petitioners were in custody twenty minutes after the two-hour period of detention had expired and before they were arrested and (2) that the seizure was not incident to a lawful arrest. The trial judge conceded that the seizure was prima facie illegal but refused to exclude the evidence because he thought that it might have been surrendered voluntarily in

1. It is uncertain whether Schaffer was handcuffed after his first interview.

which case the otherwise improper seizure would have been vitiated. Accordingly, by analogy with the Delaware practice pertaining to the admission of confessions, he heard legal argument on the admissibility of the bill, determined that he was unable as a matter of law to say that the production of the bill was involuntary, and along with the other issues submitted the issue of the voluntariness of the surrender of the bill to the jury. The jury convicted. On appeal, the Delaware Supreme Court reviewed the record carefully, particularly the question of the voluntariness of the production of the $20 bill, and affirmed. Schaffer v. State, Del., 184 A.2d 689 (1962), cert. denied, 374 U.S. 834, 83 S. Ct. 1882, 10 L.Ed.2d 1056 (1963).

■ A proper disposition of these petitions hinges on whether or not Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961) is applicable. That case held that the admission of evidence in state, as well as federal, trials had to meet federal constitutional standards pertaining to unreasonable searches and seizures. While the commission of the offense in this case preceded Mapp, nevertheless, it is my conclusion after an examination of Commonwealth v. Spofford, 343 Mass. 703, 180 N.E.2d 673 (1962); State v. Valentin, 36 N.J. 41, 174 A.2d 737 (1961); People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478 (Ct. of Appeals 1961) and other authorities that Mapp governs here since it was decided prior to the determination of petitioner's appeal by the Delaware Supreme Court, and that the admission of the $20 bill in dispute must therefore be measured by standards imposed by the federal constitution.

■ Were facts present here sufficient to constitute probable cause for arresting petitioners prior to the surrender by Schaffer of the bill, the interesting argument might be made that a limited detention under 11 Del.Code § 1902(b) (Uniform Arrest Act) was, in one sense, the equivalent of an arrest with the result that the "detention arrest" coupled with facts clearly constituting probable

cause would constitutionally justify a search without warrant. The rationale underlying the argument would be that the body of the law in this field has been shaped from opinions where the evidence in dispute was seized as an incident to a formal arrest; that the uniform statute was designed as a matter of public policy both to permit greater freedom to the police in making preliminary inquiries without necessity of obtaining a warrant and to protect the innocent public from formal arrest and booking in the many cases where a preliminary investigation would disclose that an arrest was not justified; that, under such circumstances, § 1902(b) provides a sufficiently formal type of detention as, for all practical purposes, to constitute an arrest. However, in my judgment this ground of approach fails here for lack of adequate circumstances constituting probable cause.

It results, then, that there was admitted into evidence a $20 bill seized at a time when petitioners were not under arrest and when, in my view, facts constituting probable cause for making an arrest were not present. It necessarily follows that the admission of this evidence was improper. See Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)

■ Unless, then, Schaffer waived his constitutional rights by voluntarily surrendering the $20 bill in question to Detective Fugate, his petition must be granted. Despite petitioners' argument to the contrary, in my opinion, it is not, as a matter of law, impossible for a defendant to waive his constitutional rights by consenting to a search and seizure during a period of custody or when confronted with a show of legal authority. The existence of consent is a question of fact to be determined under all the circumstances. As stated in United States v. Page, 302 F.2d 81, 83–84 (9th Cir. 1962):

"The government must prove that consent was given. It must show that there was no duress or coercion, express or implied. The consent

must be 'unequivocal and specific' and 'freely and intelligently given'. There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. ' "Courts indulge *every reasonable presumption against waiver*" of fundamental constitutional rights'. Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. The government's burden is greater where consent is claimed to have been given while the defendant is under arrest."

However, a careful analysis of the facts here in the light of the applicable federal authorities indicates that there could have been no waiver. Aside from the superficial, voluntary character of the surrender of the bill, we have only the fact that, in Schaffer's mind, the likelihood of linking it with the Fluevog burglary was so very remote[2] as to permit *an inference that it was produced freely* and without reservation in the hope of obtaining an immediate release from detention. But this argument will not stand closer examination for the reason that Schaffer must have realized that there was a good chance that the loss of a $20 bill might be discovered hard on the discovery of the burglary itself and, since among the contents of his pockets was a $20 bill, its production might, in connection with other facts then known to the officers,[3] afford sufficient probable, or reasonable, cause to justify a formal arrest.

Had Detective Fugate, before asking Schaffer to empty his pockets, warned him that anything found therein might be used against him as evidence, the result might have been otherwise. In the only other case somewhat analogous to this, United States v. DeCiccio, 190 F.

Supp. 487 (E.D.N.Y.1961), it was specifically found that the defendant was aware of his right not to be searched without a warrant and nevertheless consented. But no such fact appears here.

Accordingly, I conclude as a matter of law that Schaffer's surrender of the $20 bill in question did not meet the exacting requisites of voluntary waiver of constitutional rights defined in Page, supra. His petition is granted. The same result must be reached in the case of the petitioner Chalmers since the petitioners were tried jointly. McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

Orders will be entered in accordance with this opinion.

---

2. The police conceded that their ability to link this bill with the one stolen from the Fluevog home was "a one in a million chance."

3. The facts that petitioners were picked up in the vicinity of the burglary, without any means of identification whatever and lacking any credible explanation of their presence in the locality.