John J. MEZZATESTA and James J. Williams, Petitioners,

v.

Raymond W. ANDERSON, Respondent.

No. 20.

United States District Court
D. Delaware,
at Wilmington.
March 2, 1964.

John M. Bader, Wilmington, Del. (Bader & Biggs, Wilmington, Del.), for petitioners.

Thomas Herlihy, III, Deputy Atty. Gen., of the State of Delaware, for respondent.

LEAHY, District Judge.

John J. Mezzatesta and James J. Williams were convicted in the Superior Court of Delaware of violating state lottery laws. No petition for writ of certiorari was taken to the Supreme Court of the United States from the decision of the Supreme Court of Delaware [1] affirming petitioners' conviction, and the time within which to do so has expired.

By order dated January 23, 1962, I dismissed this petition for writ of habeas corpus since available state remedies had not been exhausted. The order was appealed to the United States Court of Appeals for the Third Circuit, 316 F.2d 157. The case was remanded with directions to vacate the order and to reconsider the petition in the light of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[2]

Chief Justice Southerland, writing for the Supreme Court of Delaware, stated the following pertinent facts:

"Acting under authority of search warrants, two state police officers entered and searched two apartments in the Clifton Park Apartments on the Edgemoor Road in New Castle County. Apartment 8, Building 81, was occupied by defendant Mezzatesta and Apartment 9, Building 92, was occupied by defendant Williams. On observing the Mezzatesta apartment through a partly opened door, they saw the two defendants (and Mezzatesta's wife, Ann) processing 'number slips,' i. e., papers evidencing or relating to bets in connection with lotteries. The defendants picked up some of the slips and attempted to flush them down the toilet.

"A search of Williams' apartment yielded about $4,700 in currency and about $2,000 in coins, as well as some more number slips.

"While under arrest, but not under questioning, Williams said to one of the officers: 'Lieutenant, how

1. Mezzatesta v. State, 3 Storey 145, 53 Del. 145, 166 A.2d 433 (1960).

2. When this petition was dismissed, Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950), was authority for the proposition ordinarily application to the Supreme Court for writ of certiorari is a requisite step in exhaustion of state remedies within the meaning of 28 U.S.C. § 2254. Mr. Justice Brennan, writing for the majority in Noia said, "Noia timely sought and was denied certiorari here * * * and therefore the case does not necessarily draw in question the continued vitality of the holding in Darr v. Burford * * *. But what we hold today necessarily overrules Darr v. Burford to the extent it may be thought to have barred a state prisoner from federal habeas relief if he had failed timely to seek certiorari in this Court from an adverse state decision. Furthermore, our decision today affects all procedural hurdles to the achievement of swift and imperative justice on habeas corpus, and because the hurdle erected by Darr v. Burford, is unjustifiable under the principles we have expressed, even insofar as it may be deemed merely an aspect of the statutory requirement of present exhaustion, that decision in that respect also is hereby overruled.

about keeping Ann out of it. She is not in it. It is our business.' Mezzatesta said nothing."

Constitutional questions raised by petitioners concern sufficiency of the affidavits for search warrants, introduction of evidence against Mezzatesta of the statement made by Williams to police officers, and the jury charge with respect to the statement. Before the alleged Constitutional violations are considered on their merits, however, whether petitioners exhausted state remedies must be determined.

1. *Exhaustion of state remedies.* The Supreme Court in Noia held the statutory requirement of exhaustion of state remedies refers only to those still open to petitioner at the time he files his application for habeas corpus. Respondent contends this ruling is not applicable to petitioners since they "deliberately bypassed the orderly procedure of filing certiorari in the United States Supreme Court and other review in the State courts." [3] The language in Noia to which respondent refers, i. e., "* * * the federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts * * *," is speaking about state courts, not the United States Supreme Court. Other language in the opinion expressly overrules Darr v. Burford, supra, to the extent application for certiorari may be regarded as a step in state court processes.[4] Thus, it does not seem the test— "deliberate by-passing of the state court system"—is intended to constitute a limitation on interference with state administration of criminal justice when there has been a failure to apply for cer-

tiorari in the United States Supreme Court.

■ Since collateral state remedies are still available,[5] respondent contends the statutory requirement of exhaustion has not been satisfied. As stated in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), and Petition of Thompson, 3 Cir., 301 F.2d 659, 28 U.S.C. § 2254 requires exhaustion of only one of several alternative state remedies.

■ An additional reason state remedies were not exhausted, according to respondent, is Mezzatesta's argument under People v. Nitti, 312 Ill. 73, 143 N.E. 448 (1924), was not reached by the Delaware Supreme Court.[6] The argument under that case was presented in the Delaware Supreme Court but was not decided since it was not raised in the trial court. Since it does not seem the Delaware Supreme Court will give any more consideration to the Nitti argument on third time around than it did on appeal and motion for reargument, nothing will be gained by requiring petitioners to retrace their steps through the courts only to ask the Delaware Supreme Court to again consider the same question it has already refused to consider. Moreover, although the Nitti argument was not raised in exactly the same form as here, the Delaware state courts were presented with all the operative facts giving rise to Mezzatesta's basic contention that his silence did not constitute a confession. Petitioners having thus sufficiently presented to the state courts contentions they make here, I proceed to the merits.

2. *Validity of search warrants.*[7] Relevant portions of the applications for

---

3. Respondent's Brief, p. 7.

4. See Note 2.

5. Further avenues of relief available to petitioners are a motion under Rule 35, Delaware Superior Court Criminal Rules, Del.C.Ann. and habeas corpus under 10 Del.C., ch. 69.

6. Nitti held there can never be a confession by silence. Petitioners' exceptions to the

trial court's charge were: (1) Williams' statement was inadmissible since petitioners were in custody; and (2) the statement was not a confession. Under Nitti, even if Williams' statement was a confession, Mezzatesta's silence was not.

7. Evidence obtained by illegal search and seizure is inadmissible in a state court under the rule of Mapp v. Ohio, 367 U.S.

search warrants are stated in the opinion of the Delaware Supreme Court as follows:

"Paragraph 1 of the Williams affidavit avers under oath the officers have good reason to suspect that in Building 92, Apartment 9, 'used as a residence by James J. Williams' there are located papers, tickets, etc., used in connection with lottery policy writing.

"This suspicion was based on information from the Wilmington Police Department that bets were being taken from certain specified shops in Wilmington to Williams' apartment.

"Paragraph 2 specifies the offense. Paragraph 3 specifies the facts showing probable cause that an offense had been committed. On information received from the Wilmington Police Department that Apartment 9 of Building 92 was being used as a numbers bank by Williams, Mezzatesta, and others, the officers watched the building entrance on seven separate days. They repeatedly saw Williams and Mezzatesta enter and leave these buildings at or near two p. m. on these days. On one occasion, Williams walked from Building 92 to Building 81 with a package in his hand. On other occasions near two o'clock p. m., operators of a Buick car carrying a package or a bag entered Building 92. Their behavior was furtive.

"The significance of the time lies in the fact that numbers slips must be returned to the bank by two p. m. or shortly thereafter because the lucky number depends on racing results.

"Finally, based on records furnished by the Wilmington Police Department, the officers averred that Williams had been arrested seven times and Mezzatesta six times for lottery policy writing."

Mezzatesta's affidavit was similar except there was no reference to an individual apartment in paragraph three.

Petitioners contend there was no showing of probable cause as to Apartment 8 of Building 81 since nowhere in paragraph three of Mezzatesta's affidavit is there a reference to that apartment. The allegation in paragraph one specifying the occupant of the premises may not, according to petitioners, be regarded as part of the proof in support of probable cause in paragraph three.

■ True, probable cause to search an apartment in a multi-dwelling building must relate to the individual unit, and not merely to the building as a whole. Probable cause, however, establishes a legal standard and does not relate to verbal expression. It is thus possible, as in the instant case, to establish probable cause without a designation of the premises to be searched as a separate particular in the statement of facts relied upon to show probable cause.

■ Probable cause is established as to Apartment 8 of Building 81 because activity observed is described as taking place in and out of Building 81 and Mezzatesta is the alleged occupant of Apartment 8 in that building. Although suspicions directed at Apartment 8 arise from the fact it is Mezzatesta's residence, the fact of his living there need not be established by evidence under paragraph three. The statement in paragraph one designating Apartment 8 as Mezzatesta's residence sufficiently connects criminal

643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), in a case where judgment of conviction had not yet become final because of a pending appeal at the time Mapp was decided. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); United States ex rel. Campbell v. Rundle, 3 Cir., 327 F.2d 153; Schaffer v. Anderson, D.C.Del., 224 F.Supp. 184 (1963). Whether the exclusionary rule of Mapp applies to a state prisoner whose appeal became final before the decision was announced but was re-sentenced after the decision, as in the case at bar, need not be resolved since articles admitted into evidence were the product of a legal search.

activities described in paragraph three with that apartment.

The alleged deficiency which is applicable to both premises is the affidavits do not state any basis for believing lottery tickets were kept on the premises. Petitioners contend the Delaware Supreme Court improperly held the officer or court issuing the warrant could take judicial notice operation of a lottery involves the presence, in a given premises, of certain tangible articles. This argument confuses judicial notice with probable cause. That operation of a lottery involves use of certain articles was not taken as judicial notice. On the contrary, the issuing judge merely gave consideration to the experience and special knowledge of the police officers who were familiar with the mechanisms of gambling activities.

3. *Williams' incriminating statement.* The trial court referred to Williams' statement—"It is our business"—as a confession and gave a charge appropriate to a confession. Conceding his statement is an admission, Williams contends it does not rise to the level of a confession because standing alone it is meaningless. This argument is without merit since everyone present understood Williams meant his statement—"It is our business"—which was made with reference to numbers slips found in the apartment, to be an acknowledgment of guilt and not merely an admission of a specific fact.

The trial court also admitted Williams' statement as an "implied confession" by Mezzatesta since he remained silent and gave a charge on the effect of an "implied confession." Mezzatesta contends (1) Williams' statement was inadmissible since defendants were in custody; (2) the statement was not a confession; and (3) even if the statement was a confession, silence was not. In order to bring

himself within protection of the Constitution, Mezzatesta must prove either of two propositions: first, Fifth Amendment protection against self-incrimination is obligatory on states,[8] or second, he was denied a fair trial.

Unfortunately, at present, protection against self-incrimination is not guaranteed by the Constitution against impairment by states. Fortunately, however, constitutional questions are always open.

■■ Whether an inference of assent can be drawn from Mezzatesta's silence is, as a matter of procedure or practice, solely for state courts. Admission of Williams' statement as against Mezzatesta was at most an erroneous ruling not violative of due process. However, the trial court's treatment of Mezzatesta's silence as a confession having the same probative force as an express confession and use of the word "confession" numerous times in the course of the charge to the jury resulted in transforming an otherwise fair trial into one which offends due process as to Mezzatesta.

The Delaware Supreme Court seemed to acknowledge correctness of the rule there can never be a confession by silence, but denied Mezzatesta benefit of it since it was not raised in the trial court. Determination of admissibility of confessions is a matter of local procedure. However, confessions have long been regarded as involving the Due Process Clause of the Fourteenth Amendment. If it is a deprivation of due process to admit into evidence an involuntary confession, then it is equally a deprivation to characterize that a confession which is not.

John J. Mezzatesta's petition for writ of habeas corpus will be granted and James J. Williams' will be denied.

An order may be submitted.

8. In the view I take of the case, it is not necessary to determine whether there was in fact compulsory self-incrimination.