Leonard Leigh Finz, J.
Defendant, who stands accused of the murder of one Sandra Zahler, moves to suppress certain evidence seized by the police prior to the issuance of a search warrant and to suppress all evidence seized under the warrant issued by the New York City Criminal Courts. The issue to be determined, therefore, is whether the defendant’s constitutional rights were violated.
On December 25, 1974 Sandra Zahler was bludgeoned to death in her apartment in Forest Hills, Queens, New York. Detective John F. Daly of the 15th Homicide Zone was one of the police officers assigned to investigate Miss Zahler’s murder. As a result of his investigation, he learned that Miss Zahler had been attempting to break off her relationship with Suraj Narayan, the defendant; that Narayan had assaulted the deceased on several occasions and had threatened her current boyfriend. He also learned that Narayan, also known as "Bobby French”, had been seen in Sandra Zahler’s apartment building in the early hours of the morning on the date of her death. Following several leads, Daly came to Mary’s Idle Hour Bar on Jamaica Avenue in Queens County. There, Detective Daly learned that the defendant had been at the Idle Hour for several hours on the evening of December 24, 1974. He was also informed that at 9:30 p.m. on that evening the decedent had called Narayan at the bar and that several hours later the defendant left to go to Sandra Zahler’s apartment.
Prior to leaving the bar the defendant had displayed a pair of black leather lady’s gloves that he had purchased as a gift for the deceased. A similar pair of gloves had been found in the dead woman’s apartment. At this time the officer also learned the defendant’s current address. This information was supplied to him by Felipe Zambrana, the owner of the bar. From Zambrana he also learned that the bar owner’s brother, John, lived in the same building as the defendant, Narayan.
John Zambrana, who worked in his brother’s bar, agreed to accompany the detective to the defendant’s room. The officer was also told that the deceased had had the defendant arrested for assault on several occasions. Upon learning this, Detective Daly called the warrant section at police headquarters and learned that there was an outstanding bench warrant for the defendant’s arrest on a charge of assault. With the knowledge that there was a "bench warrant and also of the *217 facts surrounding the homicide, I was on my way to in fact arrest Suraj Narayan if he was there at his apartment.”
At this point, Daly and a second detective, accompanied by John Zambrana, went to the defendant’s residence. Prior to leaving the Idle Hour, Daly called for a uniformed team to meet him at Narayan’s room. Narayan resided in a single room on the top floor of a three-story building. Upon arrival, the detective posted his partner on the second floor and followed John Zambrana to the third floor. The officer noted that the bottom panel of the door to Narayan’s room was completely missing. He also noted that the area around the lock was damaged. The detective observed no light on in the room and heard no noise coming from it. John Zambrana, who was in the lead, told the officer that the door was partially open and asked the officer if he should enter. There was no response from the officer. Zambrana then proceeded to enter the room and turn on the light. At this point, Detective Daly "was looking for Mr. Narayan. I looked quickly around the room. I took one step in the room, looked around, and it was a small room.”
The room was described as being approximately 8 feet by 10 feet and that it had at one time been used as a closet. In the room Detective Daly observed a leather jacket, allegedly belonging to the defendant, hanging on a closet door in open view, "which was within about two feet of me”. He also noted that there appeared to be blood stains on the jacket. The detective further observed a hairbrush with several hairs on it in the room. The officer had previously been informed that human hair had been found clutched in the dead woman’s hand. Placing an officer at the door to the defendant’s room, Daly contacted his superiors and was told to take samples from the dried bloodstains on the jacket. Returning to the room, the detective scraped a sample of the blood from the jacket. He had been informed that blood samples, unless preserved, would deteriorate rapidly. As soon as he could, Daly caused the blood sample thus obtained to be refrigerated so as to preserve it for analysis.
The following morning Daly went to the Criminal Court where, with the assistance of the District Attorney’s office, he secured a search warrant for the room from Criminal Court Judge Anthony Savarese. Returning to the room, he seized the jacket, the hairbrush containing the hairs and other *218 items. A return on the warrant was filed with the court on January 2, 1975.
The threshold question that this court must answer is whether Detective Daly’s entry into the defendant’s room was a lawful one. Bearing in mind that the officer was not yet in possession of a search warrant, some authority must be established to authorize even "one step” into the defendant’s room. Without such a basis it would follow that the seizure (taking of the blood sample) would have been among those proscribed under the United States Constitution. (Coolidge v New Hampshire, 403 US 443; Katz v United States, 389 US 347.) Moreover, if such a seizure were to be found illegal, the evidence thereafter acquired would be tainted and inadmissible. As has been held by the highest court of the State and Nation: "Rather we focus on the initial seizure of the defendant’s person noting, however, that if the initial stop of the defendant was unlawful the evidence thereafter acquired must be suppressed absent an independent establishment of probable cause. (See Chambers v Maroney, 399 US 42; Rios v United States, 364 US 253; Henry v United States, 361 US 98; People v Loria, 10 NY2d 368.)” (People v Cantor, 36 NY2d 106, 111.)
We must, therefore, focus first on the original entry made by Daly and inquire whether such entry was indeed a lawful one. In that at the time of entry there was an outstanding arrest warrant against the defendant in an unrelated assault charge, it now becomes necessary to examine the procedure employed by Detective Daly in gaining entry to determine whether the governing statute was given full compliance.
CPL 120.80 (subd 4), which prescribes the method for executing an arrest warrant, provides: "In order to effect the arrest, the police officer may * * * enter any premises in which he reasonably believes the defendant to be present. Before such entry, he must give, or make reasonable effort to give, notice of his authority * * * to an occupant thereof’. It is essential, therefore, that two statutory requirements must be satisfied in this case to find that the entry was lawful. First, Daly would have the lawful right to enter the defendant’s premises if he believed the "defendant to be present”. Second, before such entry, Daly would have had to "make a reasonable effort to give notice of his authority and purpose to an occupant thereof’.
To determine whether the above-stated conditions were met, close examination must be had of the events preceding the *219 entry into the room. These events commenced with Daly’s visit to Mary’s Idle Hour, a bar which he had learned was frequented by the defendant. There he encountered one Felipe Zambrana who professed to know both the defendant and the deceased, Sandra Zahler, and his brother, John Zambrana, who stated that he lived in the same building as the defendant and would take the detective there. Daly then made the call to ascertain that there was an arrest warrant outstanding against the defendant. His affidavit, later made, states he went there with the intention of arresting Suraj Narayan on the afore-mentioned warrant and questioning him regarding the homicide.
Together he and John Zambrana went from the bar to the building where the defendant had his room. This is of some significance because in the course of the hearing there were some inferences made that someone may have forced the door to defendant’s room in order to gain access thereto. In any event, the two went together to the premises and mounted the stairs to the room, Zambrana leading, Daly following. As they came to the door it was apparent that the bottom panel thereof was missing and the door, in the area of the lock, was cracked. The door itself was ajar or at least in a position to indicate it was not locked.
The detective testified that Zambrana, who had reached the door first, stated, "The door is open”, and then, without any word from Daly, pushed it open, went in and put the light on by pulling a string suspended in the middle of the room.
Zambrana confirmed the testimony of the detective, but in greater detail. He stated on direct examination that he knocked on the door three or four times and said to Daly, "You want me to open the door for you?” The transcript of the record reveals that Daly made no response to this question. Zambrana pushed the door open and entered with Daly behind him.
On cross-examination by defendant’s attorney it was brought out that in addition to knocking several times at the door, Zambrana shouted, "Bobby, Bobby” (defendant’s nickname) "a couple of times”. Since counsel for the defendant caused the witness to demonstrate exactly how loudly he shouted at that time, it was apparent to the court that the knocking and shouting should have aroused or caught the attention of anyone in the room.
Thus, it became clear to the detective that if the defendant *220 was in the room, he would not or could not answer. It had even crossed his mind, given the fact that a crime of passion had evidently been committed, that Narayan might be a suicide. His answer in cross-examination on this point is comprehensive as to the detective’s reasonable belief that the defendant was in the room, albeit dead by his own hand: "After collecting all the facts that I had available at that time, indicating that he was the number one person suspect in the homicide investigation, and the way that the homicide had been conducted, the battering with a blunt instrument, and that they had been lovers, my first thought was when I had reached the apartment that I would find him the victim of his own hand, a suicide.” It thus becomes apparent to this court that Daly reasonably believed "the defendant to be present”, thus satisfying the first conditional requirement of a lawful entry into Narayan’s room.
We now proceed to the second conditional requirement of lawful entry, the "reasonable effort to give notice of his authority and purpose to an occupant thereof’. On this issue, given the knocking at the door, the shouting of the defendant’s name and the lack of response from a room that measured only 8 feet by 10 feet in size, it would have been an absurdity to announce to the empty air his intentions and his authority. The law does not require a futile act. Concluding, therefore, that both statutory conditions as prescribed in CPL 120.80 (subd 4) were met, it was, at this point, lawful for Detective Daly to step into the defendant’s room and glance about to verify the presence or absence of Narayan.
There, hanging in plain and open view, was the jacket described to him as being worn by the defendant and splashed, it seemed to Daly, with the blood of the decedent. It might be argued interminably as to what might have or could have been the detective’s courses of action. It was about 11 o’clock at night. Here was the blood which, if left where it was until morning, might deteriorate beyond possibility of analysis. After hurried consultation with his superiors, Daly took the sample.
The entry into the defendant’s room had been effectuated under proper authority and in the manner proscribed by CPL 120.80 (subd 4). The evidence was in plain and open view, not two feet from the detective. He seized it and secured its safety. The procedure throughout was in accordance with law. (Harris v United States, 390 US 234.)
*221 The court having examined the search warrant and application finds that it complies. with the statute and states sufficient probable cause to believe that the items sought would be found in the defendant’s room, to wit, Detective Daly’s personal observations obtained upon his first lawful entry.
The court is mindful of the recent appellate decisions related to the discovery of evidence in the normal course of police activity, but finds it unnecessary to pursue this line of inquiry in view of this court’s decision herein. (See People v Fitzpatrick, 32 NY2d 499; People v Roberts, 47 AD2d 664; People v Manners, 49 AD2d 588.)
For the reasons above stated, the defendant’s motion for an order to suppress the evidence and to controvert the search warrant is hereby denied.