THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ANGEL GARCIA, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, entered April 15, 1977, which, after a hearing pursuant to CPL article 710, granted defendant's motion to suppress certain physical evidence and statements. Order reversed, on the law and the facts, and motion denied. The record reveals that on Friday, July 18, 1975, Lucy Allende, the "common-law wife" of the defendant, went to the 75th Precinct to request police help in removing defendant's drug supply from the apartment where they lived, which was leased by her. She informed the officers that they could then, or at any time in the future, search the apartment. Detective Scagnelli went with her to the apartment, where he was shown drugs alleged to be the defendant's. On the following Monday, Detective Scagnelli returned and, after meeting defendant in the street, signaled three other officers as he entered the building. Lucy Allende admitted the four officers to the apartment. Detective Scagnelli took her to the kitchen and, out of the presence of the defendant and the other officers, she signed a typed statement which he had prepared, consenting to and reiterating her permission allowing a search of the premises. The defendant, after proper warnings, admitted that he owned the drugs seized. Thus, the testimony of Detective Scagnelli and·the signed consent by Lucy Allende established the existence of a free and voluntary consent to the search of the premises. As

defendant's "common-law wife", she could consent to the search of the mutually shared apartment. In the absence of any proof of coercion or overreaching on the part of the police, her consent was legal and valid. The evidence supports a finding that Lucy Allende allowed the police to enter her apartment and permitted them to conduct a search. As the lessee and coinhabitant of the apartment with the defendant, she had the right to permit the search in her own right and permission to search obtained from her was valid as against the defendant (see *United States v Matlock,* 415 US 164, 171). Probable cause for the defendant's arrest existed on July 21, 1975 from the information supplied by Lucy Allende and the conversation between the defendant and Detective Scagnelli, in which the defendant admitted cohabitation with Lucy Allende in the apartment where the officer observed the drugs on July 18, 1975. The defendant voluntarily went from the street to the apartment with Detective Scagnelli and was effectively arrested on the arrival of the other officers and on the entry into the apartment. Under these circumstances, we do not find that a warrant was required for defendant's arrest. Hopkins, J. P., Latham and Damiani, JJ., concur; Titone, J., dissents and votes to affirm the order, with the following memorandum: Detective Scagnelli testified that when he asked Lucy Allende, on July 18, 1975, for permission to search the apartment where she and defendant were residing "now or at any time", she responded: "Yes, I'll show it to you, I'll tell you where it is. You can come now or you can come any time." The officer then went to the apartment and found a red cardboard box containing a clear plastic bag with vegetable matter in it. After leaving the building, he contacted the District Attorney's office about obtaining a search warrant. However, since he was off Saturday and Sunday, *it was decided by his superiors to "put it off until Monday".* Sergeant Brower, who was also involved in the case, testified that no further police activity in the matter was conducted on Friday or during the ensuing weekend, because "that was during the height of the budget crisis [in New York City] where overtime was not allowed and it was very much frowned upon" (bracketed matter supplied). In my opinion, the consent to search the apartment "now" or "at any time" cannot be unequivocally construed to mean that permission was given for either multiple searches or a continuing search *in furturo.* At most it constituted permission to conduct a single search of the apartment, either then or at some foreseeable time thereafter. Once the consent was fully acted upon on Friday, July 18, it was no longer in effect and could not be used as a basis for a "continuing search" of the subject premises on Monday, July 21 (see *Judd v United States,* 190 F2d 649; *G. M. Leasing Corp. v United States,* 429 US 338). Thus, since the consent given by Ms. Allende to search the apartment without a warrant on July 18 could not be used to justify the search on July 21 (and the majority does not contend otherwise), the search can only be justified by either the issuance of a search warrant for that purpose after the completion of the first search on July 18, exigent circumstances present on July 21 to justify a warrantless intrusion into the subject apartment or a bona fide consent to search the premises without a warrant given on July 21 by either defendant or Ms. Allende before police entry into the apartment. It is conceded that over the weekend commencing Friday evening July 18, and ending the morning of Monday, July 21, the police did not obtain a search warrant. While not conceded, nevertheless, it is manifestly obvious that the police had no justifiable reason for not obtaining one during that ample period of more than 48 hours. The reasons given for not obtaining a search warrant over the weekend, namely, that the officers involved were not working on

Saturday and Sunday and budgetary problems precluded overtime, are patent absurdities and totally indefensible. As was succinctly stated by Mr. Justice Potoker in Criminal Term: "The fact that the officers involved in this investigation were not working on Saturday or Sunday does not mean that the Constitution as well had taken days off. Nor will police budget cuts or a duty roster serve as the 'exigent circumstances' which would allow the police to forgo the need for a search warrant." Where ample time is available for law enforcement officials to secure a warrant, the warrantless seizure of evidence, even in plain view, is forbidden (People v Spinelli, 35 NY2d 77, 81). Since the police officers became cognizant of the controlled substances in the apartment on Friday and decided to confiscate them by a further entry on the following Monday, no exigent circumstances existed to justify their failure to obtain a warrant during the ensuing period of more than 48 hours (see People v Spinelli, supra; see, also, Coolidge v New Hampshire, 403 US 443). Turning now to the question whether permission to conduct a search of the apartment was validly granted on July 21 by either defendant or Ms. Allende, the majority asserts that the testimony of Detective Scagnelli and the signed consent of Ms. Allende established a bona fide search. I disagree. According to the testimony of Detective Scagnelli, on July 21 he and his police colleagues met defendant coming out of a grocery store located on the corner near the subject apartment building. By means of a ruse, to wit, an assertion that the detective was seeking information about a hit-and-run driver, Scagnelli succeeded in having defendant agree to accompany him to the apartment. As they went into the building, Scagnelli signalled three other officers to also enter the building. Ms. Allende opened the door as Scagnelli and defendant approached the apartment. The following is the testimony of Scagnelli as to what then transpired: "I said, 'can we come in', she said yes. [However, on cross-examination, Scagnelli testified "and when she opened the door, we went into the apartment", omitting any reference to obtaining consent to enter.] And I told Garcia that, I took him in with him and the other officers would also come in. At that point, he [defendant] questioned me. 'Is there some other problem?' And I said yes, there is some other problem, you'll have to come in and you'll have to sit down and we're going to search your apartment. And at that point, he told us that we shouldn't search his apartment. I said, 'Sir, we have the legal right to search your apartment.' * * * At that point we went into the apartment and I seated Mr. Garcia. THE COURT: Who is we? THE WITNESS: Mr. Garcia, Sergeant Lanigan, Sergeant Brower and Detective Moore and myself. We went into the living room and I told Mr. Garcia to sit down on the livingroom sofa. At that point, I asked Miss Allende to come into the kitchen with me. I went into the kitchen with her and I said, do I still have permission to search your apartment at that point. She said, 'Yes, you do.' I then produced a typed piece of paper which would give me written permission to search her apartment and I showed it to Miss Allende and I asked her to read it and sign it if she in fact wanted me to search the apartment. She read it, she signed it." (Emphasis and bracketed matter supplied.) In a similar vein, Sergeant Brower testified: "Myself and the other members of the backup team entered the hallway where Detective Scagnelli was talking with Garcia and Miss Allende was also standing in the doorway of her apartment. We then told Garcia, come on, let's go into the apartment. We brought him into the apartment. [He was ordered to sit down on the couch and complied.] THE COURT: Well, on what basis did you say to the defendant, 'Come on, let's get out of the hallway and go into the apartment?' THE

WITNESS: In that area, you stay in the hallway too long, you're putting yourself in a lot of jeopardy. So, for the safety of my fellow officers and myself, I wanted to get out of the hallway into a safe secure location. * * * Q. Sargeant [sic], did you enter that apartment on the first floor * * * to 529 Hegeman to seek refuge or did you go there to search the apartment? A. Went in there to search the apartment." (Bracketed matter supplied.) Both officers also testified that prior to entering the apartment, defendant was handcuffed and not free to leave. At this point in the case, the People do not rely either on the consent by Ms. Allende on July 18, or exigent circumstances to justify the warrantless search conducted on July 21, but, rather, on Ms. Allende's written consent after the intrusion. However, the validity of the entry of the police into the apartment must depend upon whether defendant or Ms. Allende consented thereto (cf. *People v Schwab,* 52 AD2d 732). Where police entry into a building is not based upon unequivocal, specific or intelligently given consent, a subsequent search is illegal *(People v Schwab, supra; People v Loria,* 10 NY2d 368). From the testimony set forth above, it is clear that the police officers perpetrated an unjustified and unauthorized entry into the apartment itself. While the evidence is conflicting as to whether Ms. Allende gave the police officers consent to enter the hallway, it is obvious from the evidence that neither defendant nor Ms. Allende consented to the ensuing intrusion into the apartment where the contraband was located (cf. *Matter of Finn's Liq. Shop v State Liq. Auth.,* 24 NY2d 647). Moreover, the law is settled that a prosecutor who seeks to rely upon consent to justify the lawfulness of a search has the burden of proving that the consent was freely and voluntarily given. Under the circumstances, I am of the opinion that the written "consent" executed by Ms. Allende on July 21, after the police had forcibly entered her apartment with defendant handcuffed in their wake, constituted at most a mere submission or acquiescence to lawful authority (cf. *Bumper v North Carolina,* 391 US 543, 545). A third person is not deemed to have voluntarily consented, within the rule as to voluntary consent, for the one entitled to an immunity from a search, where the surrounding circumstances demonstrate that the third party's submission to the search was impliedly coerced by the official character of the searchers *(Elmore v Commonwealth,* 282 Ky 443; *Amos v United States,* 255 US 313; *State v Darwin,* 25 Conn Sup 153; 79 CJS, Searches and Seizures, § 62). Since defendant's arrest herein was premised on what I believe to have been an illegal search and seizure of the drugs found in the subject apartment, his self-incriminating statements, elicited a short time after the contraband was discovered, even if voluntarily made, were obtained by exploitation of his Fourth Amendment rights and, therefore, were correctly suppressed by Criminal Term (see *Brown v Illinois,* 422 US 590; *People v Martinez,* 37 NY2d 662). Accordingly, I vote to affirm the order suppressing both the contraband and the oral statements.