OPINION OF THE COURT
Jack Mackston, J.
Defendant is charged in two counts with violating section 9-105(1,a) of the Zoning Law of the City of Long Beach, to wit:
(1) using premises 173 West Penn Street, located in a one-family zone (though previously granted a two-family variance) for three dwelling units;
• (2) altering the subject premises with intent that it be used for six dwelling units.
The building department having reason to believe illegal alterations were being made and having been denied access to inspect the premises, obtained a search warrant, dated June 27, 1978, and addressed "To any Police Officer of the City of Long Beach” authorizing a search of the premises between *860 June 27 and July 6, 1978, for the purpose of obtaining the evidence requested.
At the trial, it was established that said warrant had been used to conduct three separate inspections: the first on June 28, 1978, between 10:15 a.m. and 11:45 a.m., by a police officer and two building inspectors; the second on July 5, 1978, between 11:55 a.m. and 12:50 p.m., by a police officer and four building inspectors; and the third at about 6:00 p.m., on July 5, 1978, by one inspector in the initial presence of a police officer who did not remain throughout the search. The evidence also indicated defendant utilized the premises as a business venture rather than a personal residence.
At the close of People’s case, defendant moved to suppress the building inspectors’ testimony of their interior observations of the premises, contending they were the result of an unreasonable search made in violation of the Fourth Amendment of the United States Constitution, more particularly, that the warrant was (a) restricted to a police officer alone and did not permit building inspectors to join with him; and (b) essential evidence was obtained during an unwarranted second and third inspection.
The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
Evidence obtained through an illegal search in violation of the Fourth Amendment was held inadmissible in State court proceedings by reason of the due process clause of the Fourteenth Amendment. (Mapp v Ohio, 367 US 643.)
The exclusionary rule applies only where the search is unreasonable. Searches based upon a warrant, consent, or made as an incident of a lawful arrest are reasonable and therefore not illegal. (People v Loria, 10 NY2d 368.)
In the present case, the primary issue concerns the scope of the warrant. Defendant in branding the search unreasonable does not question probable cause for the warrant’s issuance, but rather the character of its execution, contending the same to be excessive and impermissible; more particularly, that the presence of building inspectors and the continuation of the search on two subsequent occasions was unauthorized.
*861 In formulating the rule of law to be applied, it is important to note that the Building Department of the City of Long Beach is an administrative agency charged with the enforcement of both building and zoning codes and authorized thereunder to make building inspections for that purpose (Code of Ordinances, § 13-23).
The search under consideration rested upon statutory authority and was of an administrative nature rather than the classic criminal type. (Camara v Municipal Ct., 387 US 523, routine health code enforcement inspection of a private dwelling; See v City of Seattle, 387 US 541, routine fire code enforcement inspection of a commercial warehouse.)
Although the Fourth Amendment does not distinguish between ádministrative and criminal searches, both being subject thereto, less stringent rules may be applied to the former in determining:
(1) the degree of probable cause necessary for the issuance of a warrant (Camara v Municipal Ct., supra; United States v Blanchard, 495 F2d 1329, wherein it was held that either an agent’s personal observation that liquor was being sold without a tax stamp, or that the premises had not been inspected for 12 months would be sufficient to sustain the warrant); or
(2) the degree of consent necessary to waive Fourth Amendment rights, absent a warrant (United States v Thriftimart, Inc., 429 F2d 1006, casual consent given by warehouse manager for a food inspection).
The reason for the application of a less stringent rule to administrative as opposed to criminal searches rests upon the unique character of the former and the court’s effort to effectively balance the public interest against the individual’s right to privacy. In Camara v Municipal Ct. (387 US 523, 535) the court said: "Unlike the search pursuant to a criminal investigation, the inspection programs at issue here are aimed at securing city-wide compliance with minimum physical standards for private property. The primary governmental interest at stake is to prevent even the unintentional development of conditions which are hazardous to public health and safety. Because fires and epidemics may ravage large urban areas, because unsightly conditions adversely affect the economic values of neighboring structures, numerous courts, have upheld the police power of municipalities to impose and enforce such minimum standards even upon existing structures. In determining whether a particular inspection is reasonable— *862 and thus in determining whether there is a probable cause to issue a warrant for that inspection — the need for the inspection must be weighed in terms of these reasonable goals of code enforcement.” Quoting with approval the rationale of Frank v Maryland (359 US 360, 367-371) though otherwise overruled, the court continued (Camara, supra, p 537). " 'Time and experience have forcefully taught that the power to inspect dwelling places, either as a matter of systematic area-by-area search or, as here, to treat a specific problem, is of indispensable importance to the maintenance of community health; a power that would be greatly hobbled by the blanket requirement of the safeguards necessary for a search of evidence of criminal acts. The need for preventive action is great, and city after city has seen this need and granted the power of inspection to its health officials; and these inspections are apparently welcomed by all but an insignificant few. Certainly, the nature of our society has not vitiated the need for inspections first thought necessary 158 years ago, nor has experience revealed any abuse or inroad on freedom in meeting this need by means that history and dominant public opinion have sanctioned.’ ”
In weighing the reasonableness of the administrative search under review, it is fitting that the same less stringent rule applied to issuance of the warrant, also be applied to its execution.
With respect to that branch of defendant’s motion concerning the duration and continuation of the search, no exact time limit can be applied and the reasonableness thereof must rest upon the circumstances of each case (State v Williams, 169 Conn 322).
In that regard, testimony was taken to determine the reasons for the continuation on the two subsequent occasions. The evidence indicated that on June 28, 1978, two inspectors observed plumbing, water, and gas alterations had been made without a permit and that zoning irregularities were apparent. Their written findings were filed June 29 and June 30, 1978 respectively, but not reviewed and discussed by the building commissioner and his assistant until July 5, 1978, when they found the reports lacked a floor plan and were insufficient in detail, necessitating a continuation of the search on July 5, 1978, which resulted in the preparation of a more detailed report and a floor plan which showed a three-story, 26-room building. The testimony further indicated that *863 the time lapse between the first and second inspections was due to the July 4 holiday and weekend.
Considering the foregoing and that we are here dealing with an administrative search, the court finds that the second inspection was a necessary and reasonable continuation of the first, not arbitrary or capricious, and within the purview of the warrant, and further that the time lapse was satisfactorily explained. Accordingly, testimony of observations obtained during the second inspection will not be suppressed and this aspect of defendant’s motion is denied.
However, the third inspection was improper in that the police officer to whom the warrant was issued was not present during the duration thereof (Nuckols v United States, 99 F2d 353). Testimony derived from that last search was insignificant and unnecessary for determination of the merits of the case.
The second branch of defendant’s motion objecting to the presence of building inspectors is not persuasive, and is also denied. Although CPL 690.05 (subd 2) does not authorize issuance of a warrant directly to other than a police officer, it does not specifically prohibit the attendance of those having special training and ability to discern building and zoning violations (Romero v Squier, 133 F2d 528, where a warrant was issued to a law officer for a search for stolen maps belonging to the United States, the court held it was proper for an Army officer who could identify the maps to be present; United States v Jones, 518 F2d 384, where Federal agents accompanied State officers).
The foregoing constitutes the court’s findings of fact, conclusions of law, and reasons for its denial of so much of the motion to suppress as is indicated. (CPL 710.60 subds 5, 6.)
Defendant’s motion to dismiss at the close of People’s case, and as renewed at the close of the entire case, on the grounds that the prosecution failed to establish a prima facie case, is denied with respect to count I, but granted with respect to count II since it was not sufficiently established that defendant did, in fact, alter the building as alleged.
Defendant’s further motion to dismiss, at the close of the entire case, on the grounds that the People failed to establish their case beyond a reasonable doubt, is denied with respect to count I, and based upon the credible evidence, defendant is found guilty thereof and is to report to this court for sentencing on December 12, 1978, at 2:00 p.m.