**Pete GIACONA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 34930.**

Court of Criminal Appeals of Texas.

Nov. 7, 1962.

Rehearing Denied Jan. 30, 1963.

Certiorari Denied Oct. 14, 1963.
See 84 S.Ct. 92.

On Motion to Withdraw Mandate and Abate Appeal Nov. 27, 1963.

**330**

Clyde W. Woody, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and James M. Shatto, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for the possession of marijuana; the punishment, five years.

Officers Hightower and Shelton, of the narcotics division of the Houston police department, passed by the house located on the front of a lot and went between thirty and forty yards from the street to a three-apartment unit, two of which were downstairs and one upstairs, located on the back of the lot. While on the porch downstairs and outside of the apartment adjacent to that of the appellant, Hightower and Shelton heard loud talking and cursing, and smelled marijuana burning. Then they moved in front of appellant's apartment and on looking through the window of his apartment they saw the appellant smoking a handrolled cigarette, and then pass it to a male companion. From the outside the officers also saw through the window three handrolled cigarettes with the ends tucked and a quantity of green plant substance on a table.

Officer Hightower knocked on the front door of appellant's apartment, announced he was a police officer and when no one responded, Officer Shelton unlatched the screen door after cutting the screen and the wooden door being open, they entered the apartment. Officer Hightower took the cigarette from the companion of appellant that he had seen pass between them a few seconds before.

The officers took possession of only that which they had seen from the outside of the apartment which was the partially smoked cigarette, the three other cigarettes and the loose plant substance on the table; and an analysis made by a chemist showed that they each contained and were marijuana.

The officers had no warrant of arrest or search warrant for the appellant or his apartment.

The appellant did not testify or offer any evidence.

■ Appellant strenuously urges that the trial court erred in admitting in evidence the officers' testimony of what they did, saw or heard after entering on his premises on the ground that they were not at such time legally on his premises.

Appellant relies upon Gonzales v. State, 131 Tex.Cr.R. 15, 95 S.W.2d 972, but overlooks the opinion of this Court in Crowell v. State, 147 Tex.Cr.R. 299, 180 S.W.2d 343, in which it was held that the contention which appellant here makes was not the basis for the reversal in the Gonzales case.

In considering a similar contention that the testimony of two officers was not admissible in evidence because they were unlawfully on the premises, this Court in Heath v. State, 161 Tex.Cr.R. 323, 276 S.W. 2d 534, 535, said:

"Appellant objected to the testimony of the Sheriff and the Ranger on the grounds that they were not armed with a search warrant and were unlawfully upon his premises.

"The State relies upon Crowell v. State, 147 Tex.Cr.R. 299, 180 S.W.2d 343, and Eversole v. State, 106 Tex.Cr.R. 567, 294 S.W. 210. The rule announced in those cases seems to be that if one is foolish enough to leave his windows uncurtained he may not complain if another comes upon his property and observes an illegal act being committed therein. In the Crowell case we discussed the holdings of the Supreme Court of the United States on the question."

See Art. 212, Vernon's Ann.C.C.P., and the cases noted under it.

■ The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.

## ON MOTION FOR REHEARING

McDONALD, Judge.

In his Motion for Rehearing and by well-prepared brief and forceful oral argument appellant's very able counsel requests this Court to specifically pass on the federal issues raised in this Court and in the trial court. It is appellant's position that we have wholly overlooked many of his objections taken to the search in question and that we have not seen fit to so much as give him the benefit of our views on these objections and exceptions raising the federal constitutional issues. Appellant further takes the position that we have only considered the limited question of whether or not trespassing is a violation of the laws of the State of Texas and that we have not considered the right of privacy and the right to be left alone. We shall attempt to fully state and clarify our position on these various matters.

Without adverting to a restatement of the facts, which are rather fully related in our original opinion, we reiterate that this is not a case of evidence obtained as a result of an illegal search. It is clearly a case of an arrest being made by officers without a warrant for the felony offense committed in their presence and to seize as an incident to this legal arrest, the marijuana found in possession of appellant.

■ Appellant seems to take the position that the two officers were initially upon private premises illegally. We entertain no doubt that the two officers had a perfect, legal right to be upon the premises, the front porch. "Neither under the common law nor by virtue of any general statute, is a mere invasion of private property indictable in Texas." 41A Tex.Jur., page 500, section 44.

Whether the officers had obtained a search warrant, or by what authority they went on the premises occupied by the several apartments, is not shown, appellant having objected when such questions were propounded to the State's witness Shelton, and the objection having been sustained. Suffice it to say that, as we view the record, it does not show that the officers were unlawfully on the porch when they heard loud talking and cursing, smelled marijuana and looked in and saw appellant and Lewis smoking a marijuana cigarette.

Appellant cites us: Brock v. United States, 5 Cir., 223 F.2d 681; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; and Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, in support of his contention that the evidence was obtained by the officers after an illegal entry into appellant's home, and he excerpts from these cases cited pertinent portions to sustain him, but he does not give us the factual basis for these various cases. In our judgment, it is necessary to fully analyze the cited cases to see if they are in point or may be distinguished from the case at bar. To us, it is clear that in all of the cases cited by appellant the evidence admitted was obtained as a result of an illegal search and not as an incident to a lawful arrest without a warrant.

Brock, supra, was a case from Florida involving an illegal still. It was reversed because the government had violated petitioner's rights under the Fourth and Fifth Amendments to the United States Constitution, which respectively avail the citizen against unlawful searches and seizures and also insure him against self-incrimination.

Appellant insists that Brock, supra, is on a parallel with the case at bar because the federal agents looked through the window and then made the search without a warrant. He overlooks the fact that these federal agents had observed an illicit still for

*TWO DAYS* before they made the raid, without first attempting to obtain a search warrant.

In Mapp, supra, the Ohio officers went to Miss Mapp's home pursuant to information that a person was hiding out in the home, who was wanted for questioning in connection with a recent bombing, and that there was a large amount of policy paraphernalia being hidden in the home. The officer first knocked on the door and demanded entrance, but Miss Mapp, after telephoning her attorney, refused to admit them without a search warrant. The officers advised their headquarters and undertook a surveillance of the house. The officers again sought entrance *SOME THREE HOURS LATER* when four or more additional officers arrived at the scene. When Miss Mapp did not come to the door immediately, at least one of the several doors to the house was forcibly opened. They then searched the entire premises and found obscene materials for possession of which she was ultimately convicted. The officers had not seen any offense, either felony or misdemeanor, committed in their presence. There was no justification for an arrest without a warrant. As we understand it, Mapp v. Ohio, supra, held, as a matter of due process, evidence obtained by a search and seizure in violation of the Fourth Amendment is inadmissible in a state court as it is in a federal court.

■ We are not in disagreement with the results announced in either Brock, supra, or Mapp, supra. We think that in both instances the officers had adequate time to and should have secured a search warrant. In this connection, we point out that in this state search of one's place of abode (which includes a hotel room occupied by him) requires a search warrant or the right to arrest the occupant. Such a search upon probable cause is not authorized. Tarwater v. State, 160 Tex.Cr.R. 59, 267 S.W.2d 410; Giles v. State, 133 Tex.Cr.R. 454, 112 S.W.2d 473; Williamson v. State, 156 Tex. Cr.R. 520, 244 S.W.2d 202.

■ Also is the fact that by statute (Article 727a, V.A.C.C.P.) in effect before Mapp v. Ohio was written, evidence obtained in violation of *any* provision of the Constitution or laws of the United States or of this state, is inadmissible against the accused on trial in a criminal case in the courts of this state.

We are here dealing with an arrest made without a warrant by officers who saw a felony being committed in their view and a subsequent legal seizure, or taking, of the contraband in the officers' view and in appellant's possession, as an incident to a lawful arrest. We are not here dealing with a factual situation primarily involving search. Appellant has apparently overlooked this distinction.

Bynum, supra, involves a defendant who was arrested without probable cause at a time when he was committing no offense against the law in the presence of the arresting officer. We do not think it applicable to the case at bar.

In McDonald, supra, the defendant had been under surveillance for months, as shown by the opinion. He was convicted for carrying on an illegal lottery. The officer "did not then have knowledge of a crime sufficient even in his own opinion to justify arrest, and he did not even know that the suspect, McDonald, was in the rooming house at the time." Under these facts, what the officer saw when he climbed on a chair and looked through the transom of the room of the appellant, and the evidence obtained as a result of a search of said room after McDonald's arrest, was held to be inadmissible.

Johnson, supra, a narcotic addict informer, told the Seattle police officer at about 7:30 P.M. that opium was being smoked at the Europe Hotel. The officers then went back to the hotel between 8:30 and 9:00 P.M. They smelled opium but saw none—they saw no law being violated until they went in the hotel room and made the search and then found the opium. In the case at bar, the officers smelled marijuana and also

saw the appellant smoking and pass the cigarette to Lewis. The officers in Johnson's case, supra, had between an hour and an hour and a half in which to have secured a warrant.

The Fourth Amendment to the Constitution of the United States reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Constitution of Texas, Art. 1, § 9, Vernon's Ann.St., provides:

"The people shall be secure in their persons, houses, papers and possessions, from all *unreasonable* seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

■ Basically, there is little, if any difference, between the Fourth Amendment to the Federal Constitution and the foregoing article from our Constitution, known as the Bill of Rights. It is to be noted that neither prohibit all searches and seizures, but only such as are *"unreasonable."*

■ A search without a warrant will not be regarded as unreasonable where the search was incidental to a lawful arrest. This has been the rule in Texas so long that we find it unnecessary to cite authorities in support of it.

It is also the same type of rule in effect in the United States. In Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, the Supreme Court of the United States, speaking through Mr. Justice Butler, used the following language:

"The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted."

In State v. Smith, 37 N.J. 481, 181 A.2d 761 (June 4, 1962), the Supreme Court of New Jersey had before it a fact situation almost identical to the case at bar. Smith's case was a narcotics prosecution in which it was held that the offense was committed within the officers' "presence," justifying arrest without warrant and subsequent search, where officers saw offense through crack in door or keyhole. The Court stated in Smith, supra:

"Here the officers saw the offense. That they saw it through a crack in the door or the keyhole does not affect the direct character of the knowledge gained or the conclusion that the offense occurred in their 'presence' within the meaning of that word. Rather it raises at best a different question, whether thus to peer into private property through an aperture constitutes a search, with the result that the arrest depended upon the product of the search, rather than the search upon the arrest. See Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961)."

The Court further stated in Smith, supra:

"Thus the presence of the detectives at the door to the apartment itself involved no misconduct or invasion of the rights of anyone. A policeman is not out-of-bounds when he is in the common passageway of a multi-family house in the furtherance of an investigation. * * * Peering through a window or a crack in a door or a keyhole is not, in the abstract, genteel behavior, but the Fourth Amendment does not protect against all conduct un-

worthy of a good neighbor. Even surveillance of a house to see who enters and leaves is something less than good manners would permit. But it is the duty of a policeman to investigate, and we cannot say that in striking a balance between the rights of the individual and the needs of law enforcement, the Fourth Amendment itself draws the blinds the occupant could have drawn but did not. In the absence of a physical entry into premises secured by the Amendment, there is no unreasonable search. In such circumstances it has been held that the guaranteed right of privacy is not violated when a police officer, by use of his senses, detects a criminal event occurring in an area protected by the Amendment. As to eavesdropping, see Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942) (even with aid of detectaphone).''

Also, see the many authorities cited on page 769 of Smith, supra.

"The question then is whether the Fourth Amendment intended to nullify the State's clear right to search by imposing a condition which would defeat it. If the State's right to the contraband is to be denied, it must be because of the evident danger and rudeness of a sudden entry. But the danger and the rudeness are not the gratuitous product of official insolence or indifference; they are the consequences of the criminal enterprise, made inescapable by its nature. Moreover, in striking a balance between the right of the State and the rights of the individual, the need to protect the innocent is not a conspicuous factor; for, as we have said, the hypothesis includes the existence of probable cause and indeed a reasonable basis to believe a criminal event is in progress. Hence, to require that admittance be demanded and the mission revealed before entry into the premises would, overall, benefit the guilty alone. It seems to us that the Fourth Amendment does not transmute a 'reasonable' search into an 'unreasonable' one merely because the officer discharged his duty to arrest and search in a manner which fairly appeared necessary for the successful enforcement of the State's right. At any rate, in these circumstances the exclusion of the evidence would not be an appropriate sanction in the light of the probable rationale of the exclusionary rule."

█ We do not think that this case comes under the search and seizure decisions relied on by appellant; we think that it is clearly a case of a legal arrest for a felony committed in view of the officers and that it comes under the terms of Article 212, V.A.C.C.P.

█ For these reasons we are satisfied the evidence in question was properly received and that the prior decisions of this Court cited in the original opinion sustain our holding.

Appellant's motion for rehearing is overruled.

MORRISON, Judge (dissenting).

Now that the full import of the holding of the Supreme Court of the United States in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, has been brought home to the writer, I find that I cannot agree with our original disposition of this case nor can I agree with my brethren in their opinion on rehearing. What we overlooked originally and what they fail to give full application to on rehearing is the basic concept of the right of privacy as guaranteed by the Fourth Amendment to the Constitution of the United States *as interpreted by the Supreme Court*, together with the fact that by the opinion in Mapp the guaranties of that Amendment *as so interpreted* have been extended to those who are tried in State courts. The fact that the officers may not have been violating a State statute when they went upon appellant's porch is not the question. The Supreme Court has said that

all citizens are by the Fourth Amendment granted "reasonable security and freedom from surveillance." The Court of Appeals of New York (People v. Loria, 10 N.Y.2d 368, 223 N.Y.S.2d 462, 179 N.E.2d 478) has given the same construction to Mapp which the writer asserts is the correct one. See opinion of Mr. Justice Goldberg in Cleary v. Bolger, 83 S.Ct. 385 (1963).

The emergency rule which is recognized in McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, has no application here. The occupants were evidently not aware of the presence of the officers, the fact that they were being pried upon or that they were in any way suspected, and time was not of the essence. In our original opinion, we failed to point out that the officers were not able to see into appellant's apartment until they approached the window and peered through the broken slats of a closed venetian blind. Hence, there was no occasion for haste or the application of the "grave emergency" or "exceptional circumstances" rule, such as the hearing of a shot or flight by the suspect or destruction of the contraband. An officer was on hand to apprehend the occupants if they had attempted to leave, while the other had ample time to have secured a search warrant.

It should be borne in mind that there is an absence of any showing as to why the officers went upon appellant's porch. Nothing came to their attention to arouse their suspicions until after they mounted the porch. So far as this record reveals, the officers may have planned to look into the window of each apartment there situated.

Because I firmly believe that the Supreme Court of the United States will reverse this conviction when it reaches them upon their holdings in Mapp v. Ohio, supra; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; McDonald v. United States, supra; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; and Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951, I dissent to the overruling of this motion for rehearing.

## ON MOTION TO WITHDRAW MANDATE AND ABATE THE APPEAL

McDONALD, Judge.

█ It is made to appear by proper death certificate that after the conviction herein was affirmed by this Court and the Supreme Court of the United States had denied certiorari, but before mandate of this Court issued, the appellant died.

Accordingly the mandate affirming the conviction is withdrawn and the appeal is abated.

MORRISON, Judge (dissenting in part and concurring in part).

I concur in the order of this Court in withdrawing the mandate and abating the appeal, but dissent to their refusal to follow the unanimous holding of this Court in Schaeffer v. State, Tex.Cr.App., 363 S.W.2d 944, (decided in January of this year) in which we held that where an appeal is abated, the prior opinions should be withdrawn. In White v. State, Tex.Cr.App., 299 S.W.2d 143 and Vasquez v. State, Tex.Cr.App., 238 S.W.2d 968, we held that the death of the appellant rendered moot all matters presented by the appeal. Therefore, the prior opinions in this case have no value as precedent. I would not make this protest were I not deeply convinced that my brethren are in error in this case and were it not for the fact that the rules of search and seizure are among the most serious questions that come to this Court for decision.

My brethren can take no solace in the refusal of the Supreme Court of the United States to grant a writ of certiorari in this case because as that Court said in United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361, the denial of the writ of certiorari imparts no expression of opinion upon the merits of the case.