**Rudolph GIL alias Rudy Gil, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38410.**

Court of Criminal Appeals of Texas.

Oct. 27, 1965.

M. N. Garcia, Austin, for appellant.

Thomas D. Blackwell, Dist. Atty., Philip A. Nelson, Jr., Asst. Dist. Atty., and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is possession of narcotic paraphernalia with two prior non-capital felony convictions alleged for enhancement; the punishment, life.

At about 9 p.m. on July 27, 1964, three officers of the Austin Police Department entered cabin number 2 at the Jackson Courts in East Austin. They had been informed by the motel owner that appellant and a companion, Jesse Capuchino, had checked into cabin number 1, and the owner had granted the officers permission to occupy cabin number 2 for the purpose of surveillance of activities in the adjoining cabin. Capuchino had a record of prior convictions for narcotics violations, and Lt.

Gann, one of the officers in cabin number 2, testified that he was familiar with Capuchino's reputation and "had people who were keeping me up-to-date with his activities."

In order to see into cabin number 1, Lt. Gann stood on a graveled walkway alongside that cabin and looked through a window, the venetian blinds of which were partially opened and in need of repair. Appellant and his companion showered and left the motel, returning at about 11:30 p. m. From his vantage point at the window, Lt. Gann observed Capuchino open a package containing narcotic paraphernalia which he took into the bathroom out of the sight of the officer. Appellant meanwhile opened the closet door, removed his shirt and reached up inside the door frame. When Capuchino emerged from the bathroom, placing the paraphernalia on the dresser, appellant picked up an eye dropper and hypodermic needle and went into the bathroom.

At this juncture, Lt. Gann and his fellow officers prepared to enter the cabin and, in doing so, alerted Capuchino, who resisted the officer's efforts to come through the door. After forcing their way into the room, the officers arrested the pair, but Capuchino momentarily freed himself, went into the bathroom, and flushed the commode. The officers found the hypodermic needle in the commode, a bottle cap containing heroin on the dresser, and gelatin capsules and sugar above the door in the closet; the eye dropper syringe was not found. Lt. Gann testified that appellant was languid and lethargic, the pupils of his eyes were pin-pointed, his arms bore fresh needle marks. In the officer's opinion, both appellant and his companion were under the influence of narcotics.

Appellant contends that the arrest and search were illegal, and the evidence obtained as a result of the search is therefore inadmissible, as is the testimony of Lt. Gann as to appellant's physical characteristics and demeanor at the time of the arrest. He argues that the officers were within the curtilage of appellant's premises when they first observed the criminal activity inside the cabin, and that looking into appellant's window was a violation of his right to be left alone guaranteed by the Fourth Amendment of the U. S. Constitution.

As to whether or not the walkway from which Lt. Gann observed appellant's activities was within the curtilage of appellant's premises, this Court was confronted with that precise issue in the appeal from the conviction of appellant's companion on a similar charge in Capuchino v. State, Tex. Cr.App., 389 S.W.2d 296, where it was stated:

"When Gann received information from the owner of the motel that appellant had secured a cabin there, he obtained her permission to use an adjoining cabin. This necessarily carried with it permission to use all the public areas of the motel such as the graveled walkway where he stood while observing these two men inside the cabin. The pictures in evidence clearly show that the walkway was a part of the grounds of the motel and not a part of the cabin." 389 S.W.2d 296, 298.

Nor can we agree that appellant's constitutional rights were violated when police officers peered into his room through the window described above. A similar contention was considered by this court in Giacona v. State, Tex.Cr.App., 372 S.W.2d 328, cert. denied by U. S. Supreme Court, 375 U.S. 843, 84 S.Ct. 92, 11 L.Ed.2d 70; Crowell v. State, 147 Tex.Cr.R. 299, 180 S.W.2d 343; Eversole v. State, 106 Tex.Cr.R. 567, 294 S.W.2d 210, and the rule is that where one is so foolish as to leave his windows unsecured he may not complain if another observes an illegal act being committed therein.

The officers had no search warrant or warrant for arrest, nor do the facts indicate that there were sufficient grounds to obtain a warrant of any kind prior to observing appellant and his companion in posses-

sion of narcotic paraphernalia. The officers were at the motel for the sole purpose of seeing if appellant and his companion were violating laws which Capuchino was known to have violated in the past, and these officers did not have the requisite probable cause necessary to obtain a warrant until they observed these laws being violated, at which time they entered the cabin and arrested appellant.

Article 212, Vernon's Ann.C.C.P. provides:

"A peace officer or any other person, may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as felony, or is an 'offense against the public peace.'"

In Giacona v. State, Tex.Cr.App., 372 S.W.2d 328, officers looked through the window of Giacona's apartment and observed what they viewed as a narcotics violation after their attention had been attracted to the apartment by loud talking and cursing, and the smell of marijuana burning. They entered the apartment, made an arrest and seized the marijuana. In overruling Giacona's contention that the evidence was inadmissible because the arresting officers were illegally on appellant's premises, this Court said on motion for rehearing:

"We are here dealing with an arrest made without a warrant by officers who saw a felony being committed in their view and a subsequent legal seizure, or taking, of the contraband in the officers' view and in appellant's possession, as an incident to a lawful arrest. We are not here dealing with a factual situation primarily involving search. Appellant has apparently overlooked this distinction." 372 S.W.2d 328, 332.

Here, as in Giacona, the evidence which supports appellant's conviction was not obtained as the result of an illegal search, but was obtained in conjunction with the lawful arrest of appellant, who committed a felony in the presence of the arresting officers.

Finding no error, the judgment is affirmed.