**Robert Allen HULIT, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2-96-242-CR.**

Court of Appeals of Texas,
Fort Worth.

June 12, 1997.

Discretionary Review Granted
Sept. 17, 1997.

708

Richard Alley, Fort Worth, Larry Coker, Euless, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Danielle A. LeGault, Kurt Stallings, Barry Shelton, Assistants, Fort Worth, for State.

Before CHARLES F. CAMPBELL (Sitting by Assignment), DAY and LIVINGSTON, JJ.

## OPINION

PER CURIAM.

Appellant was convicted of driving while intoxicated, repeat offense, and pursuant to a plea bargain, entered a plea of guilty. He was sentenced, in accordance with the plea agreement,[1] to a term of five years in the Texas Department of Criminal Justice, Institutional Division and a fine of $1,250. Imposition of the prison term was suspended, and appellant was placed on community supervision for a period of ten years. In one point of error,[2] appellant challenges the legality of his original detention by police officers. We will affirm.

A brief summary of the facts developed at the pretrial hearing on appellant's motion to suppress the detention is helpful to our disposition of appellant's point of error. Viewed in a light most favorable to the trial court's decision, the record shows that Officer T.A. Page of the Benbrook Police Department responded to a dispatcher's radio report of a woman possibly having a heart attack in a vehicle at 2 a.m. Page was the first officer

1. Appellant obtained permission from the trial court to prosecute this appeal, and the trial court followed the terms of the plea bargain agreement. *See* Tex.Code Crim. Proc. Ann. art. 44.02 (Vernon 1979); Tex.R.App. P. 40(b)(1).

2. Appellant does not challenge the legal or factual sufficiency of the evidence.

on the scene, where he observed a pickup truck in the left turn lane on an interstate service road. The truck was stopped some fifty feet short of a traffic intersection. Page approached the truck and observed an individual, whom he later identified as appellant, slumped over the steering wheel. He believed that appellant was either passed out or had had a heart attack. Page turned on the emergency lights of his police vehicle in an attempt to alert appellant. Page then approached the truck and rapped on the driver's window. At first appellant did not respond. Eventually appellant exited his truck, leaving it out of gear, which caused it to roll backward toward the police car. Page detected the strong odor of an alcoholic beverage on appellant's breath and noticed that appellant's speech was slurred, his eyes were bloodshot, and he was disoriented. Subsequently, and not surprisingly, appellant was arrested and charged with driving while intoxicated.

## Appellant's Claim

To say the least, appellant's brief is a hodgepodge of federal and state constitutional claims, along with claims made under federal and state case law. In both the pretrial hearing and in his brief to this court, appellant claimed he was waiving any complaint under the federal constitution and statutes, and was proceeding under the Texas Constitution. But the thesis of his argument to this court is founded on a faulty proposition at the outset: "the Texas Constitution provides **more** protection to the citizens of this State than do the minimum constitutional protections provided for in the Fourth and Fourteenth Amendments of the United States Constitution," citing *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). What the court of criminal appeals held in *Heitman* was that it would *not necessarily* be bound by Supreme Court decisions addressing comparable Fourth Amendment issues but that Supreme Court decisions are still persuasive authority. *Id.* at 690 & n. 22. Further, that court has held that attorneys, when briefing constitutional questions, should carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each separate ground. *See id.* at 691 n. 23; *McCambridge v. State*, 712 S.W.2d 499, 502 n. 9 (Tex.Crim. App.1986). Other than erroneously summarizing *Heitman*, appellant has failed to adequately brief his state constitutional ground. And since he has expressly waived any argument under the United States Constitution, we will only consider his state jurisprudential arguments.[3]

The nub of appellant's argument is that the police must have either probable cause or reasonable suspicion before arresting or detaining a citizen. He argues that police in the instant case had neither. He avers, contrary to the State's brief, that there is neither a "community caretaking function" that acts as an exception to the warrant requirement, nor an "emergency doctrine" exception in Texas law. The issue before us, then, is whether when an officer reasonably believes that the safety of an individual, or the public, is threatened, he may perform a "community caretaking" function, unrelated to the detection or investigation of crime, by detaining the individual without a warrant.

## Standard of Review

At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *See DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996). The trial judge is also the initial arbiter of the legal significance of those facts. *See id.* The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. *See id.* Even if we would have reached a different result, as long as the trial court's rulings are at least within the "zone of reasonable disagreement," we should not intercede. *Id.* at 496–97.

---

3. Of course, state appellate decisions are often interspersed with federal constitutional law and decisions. But we will not make an argument for appellant as to why Article I, Section 9 might provide more protection in this area than the Fourth Amendment.

## Applicable Law

As is recognized by both parties, the court of criminal appeals has never specifically decided whether a "community caretaking" exception to the warrant requirement exists in this state. The touchstone of the Fourth Amendment is reasonableness. *See New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 740, 83 L.Ed.2d 720, 731 (1985). In the context of a stop of a moving vehicle, the inquiry into constitutional reasonableness requires a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *See Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362 (1979). Where a careful balancing of these competing interests leaves the scales tipped in favor of the reasonableness of the stop, the officer's action will pass muster under the Fourth Amendment. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 20–31, 88 S.Ct. 1868, 1879–85, 20 L.Ed.2d 889, 905–11 (1968).

As the State points out in its reply brief, this court visited the issue of the existence of a "community caretaking" exception to the warrant requirement in *McDonald v. State*, 759 S.W.2d 784, 785 (Tex.App.—Fort Worth 1988, no pet.). The facts in *McDonald* were virtually identical to those facts in this case. There the police officer saw a car parked on the side of the roadway, with its motor running and brake lights engaged. He approached the vehicle because he was concerned for the safety of the occupant. He observed the defendant slumped over the wheel. He attempted to arouse the defendant, but the defendant attempted to drive away. At that point he was detained. The officer then observed physical symptoms of intoxication. In *McDonald*, this court held:

> Certainly, police officers have a duty to protect the general welfare and safety of the public at large and individuals on the highways....

... Police officers have the right to walk up to a driver's window and observe what is in plain view in a public place. The officer had a right, and in fact a duty to be present and to investigate the situation.... The officer could well have believed after seeing [defendant] slumped over the wheel that medical circumstances rendered [defendant] unfit to drive and endangered both his own safety and the safety of the general public. Only through a brief detention of the [defendant] could the officer fulfill his duty to protect the public....

> We do not hold today that police officers may detain persons based on vague notions of protecting the general welfare. Rather, we hold that when a police officer has a demonstrable reason to believe that a particular individual may be unfit to drive for medical or other reasons, a temporary stop is justified for the limited purpose of investigating that person's well-being.

*Id.* In *McDonald*, this court adopted the United States Supreme Court's rationale in *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714–15 (1973). There the Supreme Court recognized, as we did in *McDonald*, that:

> Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Cady*, 413 U.S. at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714–15; *see McDonald*, 759 S.W.2d at 785.

Additionally, as the State recognizes in its reply brief, other state courts, when confronted with a similar issue, have adopted a "community caretaking" exception to the warrant requirement.[4] *See, e.g., Smith v. State*, 301 Ark. 569, 785 S.W.2d 465, 466

---

4. As appellant argues, it is true that one Texas court has refused to adopt a "community caretaking" exception to the warrant requirement. *See Rheinlander v. State*, 888 S.W.2d 917, 919–20 (Tex.App.—Austin 1994, pet. dism'd). But that case was decided before the court of criminal appeals reaffirmed the "emergency doctrine" in *Brimage v. State*, 918 S.W.2d 466, 500–01 (Tex. Crim.App.1996) (op. on reh'g). We believe if the Austin court were to revisit the issue today, its decision would be different.

(1990); *State v. Mitchell,* 498 N.W.2d 691, 694 (Iowa 1993); *State v. Vistuba,* 251 Kan. 821, 840 P.2d 511, 514 (1992); *State v. Pinkham,* 565 A.2d 318, 319–20 (Me.1989); *People v. Davis,* 442 Mich. 1, 497 N.W.2d 910, 915, *cert. denied,* 508 U.S. 947, 113 S.Ct. 2432, 124 L.Ed.2d 652 (1993); *State v. Martinez,* 260 N.J.Super. 75, 615 A.2d 279, 281 (App.Div. 1992); *Provo City v. Warden,* 844 P.2d 360, 364 (Utah App.1992), *aff'd,* 875 P.2d 557 (Utah 1994); *State v. Marcello,* 157 Vt. 657, 599 A.2d 357, 358 (1991). And *see generally,* 3 WAYNE R. LaFAVE, SEARCH & SEIZURE §§ 5.4(c), 6.6, 7.4 (3d ed.1996).

Recently, the court of criminal appeals reaffirmed the "emergency doctrine" analog to the "community caretaking" function. In *Brimage v. State,* the court held that even in the absence of reasonable suspicion or probable cause, officers may enter a home where they reasonably believe such action is necessary to protect an individual or the public from harm. *Brimage v. State,* 918 S.W.2d 466, 500–01 (Tex.Crim.App.1996) (op. on reh'g). In that case police were looking for a missing girl, and they entered the defendant's home without a warrant because they thought the girl might still be alive. Ultimately, they found her dead body along with evidence incriminating to the defendant. In utilizing the "emergency doctrine" exception, the court of criminal appeals applied an objective standard of reasonableness to evaluate police conduct at the time of the search. *See id.*

Though the "emergency doctrine" is typically employed in reference to an officer's entry onto premises, while the "community caretaking" function is used in the context of vehicular stops or searches, that distinction is analytically artificial because the two doctrines are based on the same rationale, i.e., even in the absence of any suspicion of criminal activity, it is constitutionally permissible for officers to conduct searches or seizures where the officers reasonably believe that their action is necessary to protect an individual or the public from harm. That rationale should apply whether the object of intrusion is a residence or a vehicle, and we so hold. In doing so we reaffirm our holding in *McDonald,* and we further adopt an objectively reasonable standard of review. The stop is permissible where the officer had an objectively reasonable basis for believing that the motorist posed a danger to himself or the public, or was otherwise in need of immediate assistance.

### Application of Law to Facts

In the instant case Officer Page received a radio transmission that there was a female in a vehicle who possibly had a heart attack. Page saw the vehicle some fifty feet from an intersection with an individual slumped over the steering wheel. When Page approached the vehicle he saw appellant had a ponytail. Page tried to arouse appellant with his emergency lights, without success. He then tapped on the window of appellant's vehicle. Page stated that he was continuously concerned about the medical condition of appellant and did not suspect any criminal activity until appellant opened the door and Page smelled the strong odor of alcohol. Viewed in a light most favorable to the trial court's denial of the motion to suppress, we find sufficient record evidence that the intrusion by Page was objectively reasonable, viewed from Page's standpoint. It was reasonable for Page to assume that appellant did in fact have a medical problem and needed assistance. It was also reasonable for Page to assume that, from a distance, appellant appeared to be a female. We believe this brief, warrantless intrusion by Page was an objectively reasonable exercise of his "community caretaking" function. Appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.