**Salvador ORTEGA, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–97–00205–CR.**

Court of Appeals of Texas,
San Antonio.

June 10, 1998.

Rehearing Overruled July 7, 1998.

Wade Arledge, Frank B. Suhr, New Braunfels, for Appellant.

Robert Covington, County Atty., Elizabeth D. Branch, Asst. County Atty., Seguin, for Appellee.

Before STONE, GREEN and DUNCAN, JJ.

## OPINION

STONE, Justice.

Salvador Ortega, III, appeals his conviction for the offense of driving while intoxicated. Ortega entered a plea of no contest to the charge of driving while intoxicated following the trial court's denial of his motion to suppress evidence. In his sole point of error, Ortega assails the trial court's denial of his motion to suppress evidence, arguing he was subjected to an illegal seizure in violation of the Texas Constitution. Finding that Ortega was lawfully stopped, we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are not in contention. No live witnesses testified at the suppression hearing. The only evidence presented to the trial court came in the form of arresting Officer Balderas' police report which contains the following information: In the early morning hours of October 30, 1996, Officer Balderas of the Cibolo Police Department observed Ortega driving westbound in a 1979 Ford Bronco on FM 78 at a slow rate of speed. Balderas, traveling eastbound, activated his radar unit and monitored Ortega's vehicle for approximately three blocks. Ortega was traveling between 18 to 20 m.p.h. in a 50 m.p.h. zone. Balderas made a u-turn and followed Ortega for a short distance. Ortega's speed did not increase which prompted Balderas to stop Ortega "to ascertain if [he] was experiencing vehicle problems." Balderas approached Ortega's vehicle and observed typical indications of intoxication. Ortega's speech was slurred, his eyes were glassy and bloodshot, and he smelled of intoxicants. Ortega admitted he had recently consumed eight or nine beers. He then consented to and failed various field sobriety tests.

Ortega was charged by information for the offense of driving while intoxicated. He filed a motion to suppress admission of evidence, arguing the evidence obtained was the product of an illegal stop. The trial court denied Ortega's motion and granted permission to appeal the pre-trial ruling.

### STANDARD OF REVIEW

Our review of the case is guided by *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). In *Guzman*, the Court of Criminal Appeals clarified the appropriate deference that appellate courts should afford to trial court rulings. *Guzman*, 955 S.W.2d at 89. Specifically, the court instructed that an appellate court should defer to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* Appellate courts should afford the same deference to a trial court's rulings on the application of law to fact questions, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* However, appellate courts may review de novo "mixed questions of law and fact" not falling within this category. *Id.* Because the facts set out in Balderas' report are undisputed, and because the trial court was not in a better position to determine the reasonableness of Balderas' stop from these facts, we review the trial court's ruling de novo. *See id.* at 87. We still review the evidence presented at the suppression hearing in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).

### WARRANTLESS SEIZURE

Article I, section 9 of the Texas Constitution does not provide guarantees against all searches and seizures, but only against unreasonable searches and seizures. *See Giacona v. State*, 372 S.W.2d 328, 333 (Tex.Crim.App.1962), *cert. denied*, 375 U.S. 843, 84 S.Ct. 92, 11 L.Ed.2d 70 (1963). A search or seizure conducted without a warrant is per se unreasonable, subject only to a few specifically established and well delineated exceptions. *See Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Crim.App.1987). The burden of proving any exception to the warrant requirement rests with the State. *See Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim.App.1986).

### ARGUMENTS ON APPEAL

It is undisputed that Balderas' stated reason for stopping Ortega was to determine

whether Ortega was in need of assistance due to the slow rate of speed at which he was traveling. Ortega avers that such a belief, even if reasonable, does not justify the stop. To support this position, Ortega relies upon *Viveros v. State*, 828 S.W.2d 2 (Tex.Crim. App.1992) and *Garza v. State*, 771 S.W.2d 549 (Tex.Crim.App.1989), for the proposition that only a reasonable suspicion of criminal activity will authorize police officers to stop and detain individuals. Ortega contends that the record in the instant case is devoid of evidence that would create some reasonable inference of criminal conduct, thereby rendering the stop illegal and the resulting evidence inadmissible. *See Viveros*, 828 S.W.2d at 4.

The State counters that Ortega is laboring under the faulty premise that a police stop or detention conducted for a reason other than for the investigation of or suspicion of criminal activity is constitutionally infirm. The State maintains that the reasonableness of a detention for constitutional purposes may depend upon a variety of factors, and that an officer's well-founded suspicion of a citizen's need for help does justify a brief, relatively unintrusive stop to determine whether aid is appropriate. The State contends that Balderas' stop, conducted for the specific purpose of determining whether Ortega was in need of assistance, falls within the "community caretaking function" exception to the requirement that a temporary detention be justified by reasonable suspicion. The State thus concludes that the trial court properly denied Ortega's motion to suppress. *See McDonald v. State*, 759 S.W.2d 784 (Tex.App.—Fort Worth 1988, no pet.).

In reply, Ortega urges this court not to adopt the "community caretaking function" as an exception to the warrant requirement, noting that the Court of Criminal Appeals has had several opportunities to adopt it, but has declined to do so. *See Viveros*, 828 S.W.2d at 4; *Shaffer v. State*, 562 S.W.2d 853, 854 (Tex.Crim.App.1978). Ortega further argues that even if we recognize and apply this exception to the warrant requirement in the instant case, the record does not

support the conclusion that Balderas' stop was an objectively reasonable exercise of his "community caretaking function," and therefore, the trial court erred in denying his motion to suppress.

### COMMUNITY CARETAKING FUNCTION

The "community caretaking function" exception was first articulated in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), when the United States Supreme Court observed:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Cady*, 413 U.S. at 441, 93 S.Ct. 2523. In *McDonald v. State*, 759 S.W.2d 784 (Tex. App.—Fort Worth 1988, no pet.), the Fort Worth Court of Appeals was the first Texas court[1] to adopt a "community caretaking function" exception to the warrant requirement. There, a police officer noticed a parked car on the shoulder of a highway. *McDonald*, 759 S.W.2d at 784. Observing that the vehicle's parking brake was engaged, the motor was running, and the driver, McDonald, was slumped over the steering wheel, the officer rapped on the window to arouse McDonald. *Id.* McDonald awoke, attempted to drive off, but then submitted to the officer's stop command. *Id.* The officer then observed signs of intoxication. *Id.* On appeal, McDonald argued that the stop was

---

1. Texas is one of a handful of states that recognizes the "community caretaking function." *See*

*Hulit v. State*, 947 S.W.2d 707, 710–11 (Tex. App.—Fort Worth 1997, pet. granted).

illegal, and therefore any resulting evidence inadmissible, because the officer did not detain him on the belief that criminal activity was afoot. *Id.* Relying upon the policy stated in *Cady,* the *McDonald* court recognized that officers, as part of their duty to protect the general welfare and safety of the public at large, may investigate situations in the absence of suspected criminal activity. *Id.* at 785. Adopting *Cady's* rationale, the *McDonald* court held that "when a police officer has a demonstrable reason to believe that a particular individual may be unfit to drive for medical or other reasons, a temporary stop is justified for the limited purpose of investigating that person's well-being." *Id.; see Hulit v. State,* 947 S.W.2d 707, 711 (Tex.App.—Fort Worth 1997, pet. granted) (reaffirming its holding in *McDonald*); *see also Cunningham v. State,* 966 S.W.2d 811, 812–13 (Tex. App.—Beaumont 1998, no pet. h.) (following *McDonald* and *Hulit's* recognition of the "community caretaking function" exception). *But see Wright v. State,* 959 S.W.2d 355, 357–58 (Tex.App.—Austin 1998, no pet. h.) (reaffirming its holding in *Rheinlander,* and waiting for Court of Criminal Appeals to decide whether exception exists in Texas); *Rheinlander v. State,* 888 S.W.2d 917, 919–20 (Tex. App.—Austin 1994), *pet. dism'd, permanently abated,* 918 S.W.2d 527 (Tex.Crim.App. 1996) (refusing to adopt "community caretaking function" without direction from Court of Criminal Appeals).

■ We are persuaded by the sound policy underlying the "community caretaking function" exception, and therefore, we follow the Fort Worth Court of Appeals and the Beaumont Court of Appeals in recognizing this exception to the warrant requirement. This exception enables officers to fulfill their roles as protectors of our general safety and welfare, and further, because this exception is evaluated under an objective standard, it ensures that the reasonableness guarantee of Article I, section 9, is met. Detentions based on vague notions of protecting the general welfare will not pass constitutional muster under the community caretaking function exception to the warrant requirement. *See McDonald,* 759 S.W.2d at 785.

### APPLICATION OF LAW TO FACTS

■ In the instant case, Balderas stopped Ortega in the early hours of the morning only after determining that Ortega was traveling at least thirty miles below the speed limit. As noted, the posted limit was 50 miles per hour; Ortega's speed registered no higher than 20 miles per hour. Ortega contends that speed alone does not provide a basis upon which an officer can reasonably conclude that the driver is in need of assistance. Additionally, Ortega suggests a number of explanations, unrelated to mechanical problems, for traveling at a slow rate of speed, including: looking for street address, driving defensively, not in a hurry, or simply lost and attempting to regain his bearings. We disagree with Ortega's assertion that his speed alone precipitated the stop. In fact, the record contains several facts not to be overlooked in evaluating Balderas' stop, including the time of night, the age of Ortega's vehicle, and perhaps most importantly, the fact that Ortega was traveling at a rate of speed less than half the posted limit. These facts demonstrate that Balderas was armed with an objectively reasonable basis for having a legitimate apprehension about Ortega's welfare, and thus, we find that the stop falls within the "community caretaking function" exception to the warrant requirement. Accordingly, the trial court did not err in overruling Ortega's motion to suppress. Ortega's point of error is overruled.

The order of the trial court is affirmed.