Affirmed and Memorandum Opinion filed August 24, 2004









Affirmed and Memorandum Opinion filed August 24, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00275-CR

____________

 

CLARENCE JOSEPH
BOUDREAUX,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 176th
District Court

Harris County, Texas

Trial Court Cause No. 914,510

 



 

M E M O R A N D U M   O P I N I O N

The jury convicted appellant of burglary
of a habitation with the intent to commit assault, enhanced with a prior
conviction for theft.  The trial court
found true the allegations in the enhancement paragraph and assessed punishment
of twenty-five years= confinement in the Texas Department of
Criminal Justice, Institutional Division. 
In a single point of error, appellant contends the trial court erred by
admitting evidence of five extraneous assaults and threats.  We affirm.

 








FACTUAL AND PROCEDURAL SUMMARY

On June 8, 2002, appellant telephoned the
home of Debra Boudreaux, his ex-wife, where she lived with their two children,
Michelle, age seventeen, and Michael, age thirteen.  Michelle answered and, at her mother=s instructions,
told appellant he could not speak to Debra. 
Appellant immediately called again, stating he needed to come to the
house.  Michelle again refused to let him
speak with her mother and hung up. 
Michelle did not answer appellant=s next call and
appellant left a message on the answering machine saying he was coming to the
house, that there would be a confrontation, and that the police would need to
be called.  He left additional messages,
saying in one that he needed to pick up an oil pan and welder=s torch left at
the house.  Michelle and Debra testified
that appellant sounded extremely intoxicated and angry during these calls.

Debra placed the oil pan and welder=s torch on the
sidewalk, near the mailbox, so appellant would have no reason to come in the
house.  Approximately thirty minutes
after the last phone call, as she was driving away from the house, Michelle saw
appellant riding in a truck that was heading towards the house.  She followed the truck until it parked and
appellant began walking towards the house. 
Michelle testified that appellant appeared intoxicated and angry.  As Michelle drove past appellant, they yelled
obscenities at one another, and Michelle testified that appellant told her he
was going to beat her.  Honking the car
horn to alert Debra, Michelle parked in the driveway and tried to call 911.  Debra came out of the house and, upon seeing appellant,
yelled at Michelle to get inside.  They
both ran inside the house as appellant approached.








While Michelle locked the door and
deadbolt, Debra hid in a bathroom.  Just
before fleeing to the backyard, Michelle watched through a small window in the
door as appellant approached the house and kicked in the door.  The door frame and lock broke and appellant
entered.  Although neither Debra nor
Michelle saw appellant inside the house, both testified they could hear
appellant screaming from within the house. 
A neighbor, Phyllis Odom, testified that she saw appellant inside the
house from across the street.  After less
than a minute, appellant exited to the front yard.  He then punched the garage door.  Hearing the punch and thinking appellant was
hitting her mother, Michelle ran back through the house to the front yard where
she and appellant once again began yelling at one another; when Ms. Odom
stepped between them, appellant pushed her to ground.  Appellant then walked down the street, but
had turned back towards the house when law enforcement arrived.  He was immediately taken into custody.  While handcuffed in the back seat of a patrol
car, he continued to scream and yell, bang his head against the car window,
shake the car, and make obscene gestures towards Michelle and Debra.  The oil pan and welder=s torch remained
untouched on the sidewalk. 

Appellant was charged with burglary of a habitation with
the intent to commit assault.  See Tex. Pen. Code ' 30.02(a).  At trial, the State sought to introduce
testimony of appellant=s conduct on other occasions to show that
he entered the residence intending to commit assault.  Following direct and cross-examination of
Michelle, the trial court held a voir dire hearing to elicit Michelle=s testimony of
prior threats and assaults against her, Debra, and Michael.  Following the hearing, appellant objected
under Texas Rules of Evidence 403 and 404(b), asserting the extraneous acts
were irrelevant and prejudicial.  The
trial court deferred ruling on the extraneous acts until direct and
cross-examination of Debra were completed. 
Upon conclusion of Debra=s testimony, and
outside the presence of the jury, the State argued that the extraneous acts
were necessary to show intent to commit assault and that appellant=s cross-examination
of the State=s witnesses made intent an issue for which
the extraneous acts could be introduced to rebut.  Over appellant=s objections to
Debra=s testimony, the
trial court admitted into evidence five instances of previous conduct:

1.                 
On December 14, 2001, appellant was arrested and jailed
for assault after he pushed Debra=s
head against a wall, kicked her in the back onto the front lawn, and locked her
out of the house;

2.                 
On January 19, 2002, appellant knocked on Debra=s door and window in violation of a
Magistrate=s Order for
Emergency Protection;








3.                 
On May 18, 2002, appellant called Debra several times
and threatened to kill her if she did not change her last name;

4.                 
On May 30, 2002, appellant assaulted Michael for not
closing a barbeque grill fast enough; and

5.                 
On May 31, 2002, appellant made several threatening
phone calls stating he was on his way to the house to kill Debra, Michelle, and
Michael.

The trial court did not allow other testimony
regarding an assault against Michelle that occurred approximately two years
earlier, or assaults against Michelle and Debra that occurred approximately
five years earlier. 

The trial court=s charge to the jury included a
limiting instruction that the jury was to consider any extraneous acts or
offenses only if they found and believed beyond a reasonable doubt that the
appellant committed the offenses, and only in order to determine motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident of the defendant.[1]


ANALYSIS

Appellant contends that the
trial court erred in admitting evidence of the extraneous acts because the acts
were irrelevant and prejudicial under Texas Rules of Evidence 403 and
404(b).  Appellant asserts the extraneous
acts should not be considered relevant under Rule 404(b) because intent to
commit assault was determinable from the act itself and because intent was
never contested at trial.  Additionally,
appellant asserts that even if the evidence was relevant, its prejudicial
effect substantially outweighed its probative value, meaning it should have
been omitted under the Rule 403 balancing test.








We review a trial court=s ruling on the admission of extraneous
acts into evidence for an abuse of discretion. 
Rankin v. State, 947 S.W.2d 707, 718 (Tex. Crim. App. 1996); Montgomery
v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (op. on reh=g). 
AA trial
court clearly abuses its discretion when its decision is so clearly wrong as to
lie outside that zone within which reasonable persons might disagree.@ 
Foster v. State, 909 S.W.2d 86, 88 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d) (citing Montgomery, 810
S.W.2d at 391).

Because reasonable minds
could disagree whether appellant=s
intent was clearly evident from the act itself and whether intent was contested
at trial, we conclude the trial court did not abuse its discretion in
determining that the extraneous acts were relevant under Rule 404(b).  Additionally, we find that the trial court
did not err when it applied the Rule 403 balancing test.  We first consider the relevance of the
extraneous acts.

VI.             
Because They Assisted the Trier of Fact to Determine
Appellant=s Intent
when He Entered the House, the Extraneous Acts were Relevant under Texas Rule
of Evidence 404(b).

Appellant first contends the
extraneous acts were irrelevant under Rule 404(b) because (1) the jury could
infer his intent during the June 8th incident from the act itself and the
surrounding circumstances, including his conduct and speech; and (2) he never
contested intent during trial.  Before
reaching these specific issues, we review the law governing the admission of
extraneous acts under Rule 404(b); it is a three-part inquiry.








Evidence of an extraneous
offense is not admissible to prove character conformity, but may be admissible
for other purposes, including proof of intent. 
Tex. R. Evid. 404(b).  Rule 404(b) is intended to ensure that a
defendant is tried for the offense he allegedly committed and not for previous
acts or bad character traits.  Mayes
v. State, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991).  For the extraneous act to be admitted, the
State must show that it is relevant to a Afact
of consequence@
contested in the case.  Rankin,
974 S.W.2d at 709; Owens v. State, 827 S.W.2d 911, 914 (Tex. Crim. App.
1992); Albrecht v. State, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972); McGee
v. State, 725 S.W.2d 362, 364 (Tex. App.CHouston
[14th Dist.] 1987, no pet.).  Thus, the
State must prove three elements: relevance and a dispute regarding a fact of
consequence.  We address each element in
turn, beginning with whether the extraneous acts relate to a fact of
consequence.

Intent is a fact of
consequence when the indictment requires the State to show beyond a reasonable
doubt that a defendant committed an act with a specific intent.  See Morgan v. State, 692 S.W.2d 877,
880 (Tex. Crim. App. 1985) (A[W]here
intent or guilty knowledge is an essential element of the offense which the
State must prove to obtain a conviction, its materiality goes without saying.@). 
In this case, the indictment required the State prove beyond a
reasonable doubt that appellant entered the house with the specific intent to
commit assault. Thus, appellant=s
intent was a fact of consequence.

An extraneous act is
relevant if it serves to make an elemental fact more or less probable.  Tex.
R. Evid. 401; Montgomery,
810 S.W.2d at 387B88.  Because appellant=s
previous conduct made it more probable that he entered the house with the
intent to commit assault, evidence of this conduct was relevant.








The third element requires
that intent be in dispute.  A simple plea
of not guilty does not create a dispute regarding intent, but intent may be
characterized as contested if the required intent cannot be inferred from the
act itself, or if a defendant presents evidence to rebut an inference that the
required intent existed.  Robbins v. State,
88 S.W.3d 256, 260B61 (Tex.
Crim. App. 2002); Ludwig v. State, 969 S.W.2d 22, 30 (Tex. App.CFort Worth 1998, pet. ref=d) (citing Johnson
v. State, 932 S.W.2d 296, 302 (Tex App.CAustin 1996, pet.
ref=d)); McGee, 725
S.W.2d at 364 (citing Ortega, 626 S.W.2d 746, 749 (Tex. Crim. App.
1981)).  Accordingly, extraneous acts may
not be admitted to show intent when (1) the trier of fact can determine intent
from the act itself, and (2) a defendant does not make intent a contested issue
either through questions asked or evidence present.  Rankin, 974 S.W.2d at 719; Ortega,
626 S.W.2d at 749.  However, if either
requirement is not met, then intent may be characterized as contested.  See Hudson v. State, 112 S.W.3d 794,
803 (Tex. App.CHouston [14th Dist.] 2003, pet. filed)
(citing Ludwig, 969 S.W.2d at 30). 
Appellant contends he satisfied both of these requirements, meaning the
trial court should not have admitted the extraneous acts because intent was
never in dispute.  Because we find
appellant made intent a contested issue, we address only that requirement.

A.                
Through his Cross-examination of the State=s Witnesses, Appellant Made Intent a
Contested Issue.

Appellant clearly created an
issue regarding intent based on his cross-examination of Michelle and Debra.
Appellant=s counsel
questioned both Michelle and Debra whether appellant intended simply to pick up
the oil pan and welder=s
torch and leave, potentially undermining the State=s
direct evidence by creating the impression that appellant entered the house
only to recover his tools.  Additionally,
Michelle acknowledged on cross-examination that appellant did not damage the
interior of the house and had not acted on previous threats.  The responses of the State=s witnesses raised the defensive theory
that appellant did not enter the house with the intent to commit assault.  See Albrecht, 486 S.W.2d at 102
(noting that responses from the witnesses during cross-examination determine
whether the State=s direct
evidence has been undermined).  If
defensive theories are raised by the State=s
witnesses on cross-examination, extraneous acts may be introduced into evidence
to rebut such theories.  Robbins,
88 S.W.3d at 261 (stating that a defendant puts intent at issue through
vigorous cross-examination and the presentation of defensive theories); Webb
v. State, 36 S.W.3d 164, 180 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d)
(citing Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994)). 








The trial court=s actions at trial showed it considered
all of the testimony before arriving at its decision to admit the extraneous
acts, thus following the standard set out in Rankin and Ortega. See
Rankin, 974 S.W.2d at 719; see also Ortega, 626 S.W.2d at 749.   It deferred ruling on admitting the
extraneous acts until after it had heard the direct and cross-examination of
Michelle and Debra, the proffered testimony from Michelle, and appellant=s objections.  By this time, appellant had created a doubt
regarding appellant=s true
intent by pointing to the following: appellant told Michelle and Debra he
wanted to pick up his oil pan and welder=s
torch; appellant did not damage the house; and appellant had not carried out
previous threats.  We cannot say the
trial court abused its discretion in determining the extraneous acts were
relevant to countering any doubt regarding appellant=s
intent raised by the cross-examination of the State=s
witnesses.[2]

Because we find appellant
made intent a contested issue, appellant cannot satisfy both of the
requirements needed to show error in admitting extraneous acts under Rule
404(b).  Therefore, we do not address the
issue whether appellant=s
intent was evident from the act and surrounding circumstances of the June 8th
incident.

VII.           
Applying the Balancing Test of Texas Rule of Evidence
403, the Trial Court Did Not Err in Finding that the Probative Value of the
Extraneous Acts Was Not Substantially Outweighed by the Danger of Unfair
Prejudice.








Appellant also contends that
even if the evidence was relevant under Rule 404(b), its prejudicial effect
substantially outweighed its probative value and, therefore, it should have
been omitted under Rule 403.  Upon proper
objection, once the trial court finds an extraneous act relevant under 404(b),
it must also assess the evidence under the balancing test of Rule 403.  See Santellan v. State, 939 S.W.2d
155, 169 (Tex. Crim. App. 1997).  Under
Rule 403, relevant evidence may be excluded Aif
its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by undue delay,
or needless presentation of cumulative evidence.@  Tex.
R. Evid. 403.  If a trial court
determines that evidence is probative of a material issue other than character
under Rule 404(b), then a presumption of admissibility exists.  Montgomery, 810 S.W.2d at 388B89. 

In weighing the probative
value of the evidence under Rule 403, the trial court considers (1) the
evidence=s
inherent probative value; (2) its potential to impress the jury in some
irrational but nevertheless indelible way; 
(3) the amount of time the proponent needs to develop the evidence; and
(4) the force of the proponent=s
need for this evidence to prove a fact of consequence, i.e., does the proponent
have other probative evidence available to him to help establish the fact at
issue.  Santellan, 939 S.W.2d at
169;  Peters v. State, 93
S.W.3d 347, 351 (Tex. App.CHouston
[14th Dist.] 2002, pet. ref=d).  A[R]eviewing
for abuse of discretion in this context requires more than deciding whether the
trial judge did in fact conduct the required balancing between probative and
prejudicial values; the trial court's determination must be reasonable in view
of all relevant facts.@  Rachal v. State, 917 S.W.2d 799, 808
(Tex. Crim. App. 1996) (citing Montgomery, 810 S.W.2d at 392), cert.
denied, 519 U.S. 1043 (1996).

Because all four of the
above factors weigh in favor of admission, the trial court did not abuse its
discretion in determining the probative value of appellant=s prior acts was not substantially
outweighed by the danger of unfair prejudice. 
As to the first factor, once intent to commit assault became a contested
issue through appellant=s
cross-examination of Michelle and Debra, the extraneous acts possessed inherent
probative value because, by their nature and similarity to the June 8th
incident, they provided proof of appellant=s
intent when he broke through the front door. 









Applying the second factor,
any potential to impress the jury in some irrational but nevertheless indelible
way was minor and not compelling enough to exclude the evidence.  The extraneous acts were not presented or
described in an inflammatory manner.  The
testimony was not extensive, occupying only fourteen pages of over 200 pages of
testimony, and the five extraneous acts were addressed briefly and directly
over those fourteen pages.  Additionally,
the trial court properly limited consideration of the extraneous acts by
instructing the jury that it had to believe beyond a reasonable doubt that
appellant committed the acts and then could consider the acts only for
determining appellant=s
intent in entering the house.  

The third factor also favors
admissibility of the evidence.  As noted
above, testimony of the extraneous acts was limited in comparison to the rest
of the State=s
evidence and did not require a significant amount of time to develop.

Finally, applying the fourth
factor, appellant cross-examined the State=s
witnesses in a manner that arguably put the State=s
evidence into doubt.  The extraneous acts
added a historical context which helped the State prove a fact at issue and
assisted the jurors to determine appellant=s
intent at the time of the alleged offense. 
We find the trial court=s
determination was reasonable in view of all relevant facts.  Accordingly, we overrule appellant=s point of error.

VIII.        
Conclusion

We conclude the trial court
did not abuse its discretion in admitting the extraneous acts as relevant to
and probative of appellant=s
intent to commit assault.  We affirm the
judgment of the trial court.

 

 

 

/s/         Wanda McKee Fowler

Justice

 

 

 

Judgment
rendered and Memorandum Opinion filed August 24, 2004.

Panel
consists of Justices Fowler, Edelman, and Seymore.

Do Not
Publish C Tex. R. App. P. 47.2(b).

 











[1]  In his brief,
appellant also contends that the trial court, in its charge to the jury,
committed reversible error by including all the non-character conformance
purposes listed in Rule 404(b), rather than limiting consideration of the extraneous
acts exclusively to the issue of intent. 
Because appellant failed to object at trial to the wording of the court=s charge, appellant waived any error on this
issue.  See Tex. R. App. P. 33.1(a)(1).





[2]  Even if the trial court had erred
in determining the evidence was relevant, the error would have been made
harmless by appellant=s questioning of Michelle Boudreuax
during his defense.  See Siqueiros v.
State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985). AWhere an extraneous offense is
improperly admitted during the State=s case‑in‑chief, the error is rendered harmless
if the defendant subsequently presents a defensive theory that authorizes the
admission of the same evidence in rebuttal.@  Webb, 36
S.W.3d at 185 n.4 (citing Macias v. State, 776 S.W.2d 255, 258 (Tex.
App.CSan Antonio 1989, pet. ref=d)). During
rebuttal, Michelle agreed that if appellant had really intended to assault her,
he could easily have done so:

 

Q.         If your father had had the intent to beat the bajeebers out
of you he could have chased you through the house into that backyard and you
would have been trapped?

A.         Correct.

Q.         Did he go into that backyard?

A.         Yes B or no, he didn=t go in
the backyard. He stayed in the house.

Q.         He did not go in the backyard?

A.         No, he didn=t.

Q.         And beat you up?

A.         No, he didn=t.

Q.         But had he intended to assault you, you would have been a
sitting duck back there?

A.         Correct.